1    KEKER & VAN NEST LLP
     ROBERT A. VAN NEST - # 84065
2    rvannest@kvn.com
     DAVID SILBERT - # 173128
3    dsilbert@kvn.com
     DAN JACKSON - # 216091
4    djackson@kvn.com
     633 Battery Street
5    San Francisco, CA 94111-1809
     Telephone:    415 391 5400
6    Facsimile:    415 397 7188

7    Attorneys for Defendant
     LINKEDIN CORP.

8

9

COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
LOWELL D. MEAD (223989)
lmead@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    (650) 843-5000
Facsimile:    (650) 849-7400

Attorneys for Defendant
FACEBOOK, INC.

10                     UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12   BASCOM RESEARCH, LLC, a Virginia
     limited liability company,
13
                   Plaintiff,
14
          v.
15
     LINKEDIN CORPORATION, a Delaware
16   corporation,
17
                   Defendant.
18

19   BASCOM RESEARCH, LLC, a Virginia
     limited liability company,
20
                   Plaintiff,
21
          v.
22
     FACEBOOK, INC., a Delaware corporation,
23
                   Defendant.
24

Case Nos. 12-cv-06293 SI, 12-cv-06294 SI

**NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT OF
INVALIDITY UNDER 35 U.S.C. § 101**

Date:        November 21, 2014
Time:        9:00 a.m.
Dept.:       10
Judge:       Honorable Susan Illston

Date Filed:  October 3, 2012

Trial Date:  None Set

25

26

27

28

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101
Case No. 12-cv-06293 SI, 12-cv-06294 SI

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................3

    A. The Bascom patents. ................................................................................3

    B. The Patent Office recognized the abstract nature of Bascom's claims....................4

    C. Establishing relationships between documents is an ancient abstract idea.............5

III. ARGUMENT .......................................................................................................9

    A. The asserted claims are directed to the abstract idea of establishing relationships between document objects.............................................10

    B. The asserted claims do not contain anything that transforms the patent-ineligible abstract idea into a patent-eligible invention. .......................................14

IV. CONCLUSION...................................................................................................19

866823

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Accenture Global Serv., GmbH v. Guidewire Software, Inc.*
    728 F.3d 1336 (Fed. Cir. 2013) .................................................................. 11, 17

*Alice Corp. v. CLS Bank Int'l*
    134 S. Ct. 2347 (2014) .............................................................................. *passim*

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*
    133 S. Ct. 2107 (2013) ...................................................................................... 9

*Bancorp Serv. v. Sun Life Assur. Co. of Canada*
    687 F.3d 1266 (Fed. Cir. 2012) .................................................................. 11, 13

*Bilski v. Kappos*
    130 S. Ct. 3218 (2010) ............................................................. 6, 9, 10, 11, 14

*buySAFE, Inc. v. Google, Inc.*
    — F.3d —, 2014 WL 4337771 (Fed. Cir. Sept. 3, 2014) .............................. 6, 11, 15

*CMG Financial Serv., Inc. v. Pacific Trust Bank, F.S.B.*
    No. CV 11-10344 PSG (C.D. Cal. Aug. 29, 2014) ...................................... 12

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*
    CV 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014) ......................... 12, 13

*Compression Tech. Solutions LLC v. EMC Corp.*
    No. C-12-01746 RMW, 2013 WL 2368039 (N.D. Cal. May 29, 2013) ............ 11, 13

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*
    2014 WL 718153 (Fed. Cir. 2014) ............................................................. 11, 13

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*
    558 Fed. Appx. 988 (Fed. Cir. 2014) ............................................................. 15

*CyberSource Corp. v. Retail Decisions, Inc.*
    654 F. 3d 1366 (Fed. Cir. 2011) ................................................................. 11, 13

*Dealertrack, Inc. v. Huber*
    674 F.3d 1315 (Fed. Cir. 2012) .............................................................. 11, 15, 17

*DietGoal Innovations LLC v. Bravo Media LLC*
    13 CIV. 8391 PAE, 2014 WL 3582914 (S.D.N.Y. July 8, 2014) ................... 12, 13, 16

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*
    — F.3d —, 2014 WL 3377201 (Fed. Cir. July 11, 2014) .......................... 9, 11, 13

*Eclipse IP LLC v. McKinley Equipment Corp.*
    No. SACV 14-742-GW(AJWx), slip op. (C.D. Cal. Sept. 4, 2014) ................... 12

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*
    No. 8:11-cv-2826-T-23TBM (M.D. Fla. Sept. 11, 2014) ................................ 12

ii

866823

*Fort Prop., Inc. v. Am. Master Lease LLC*
    671 F.3d 1317 (Fed. Cir. 2012)............................................................................... 11

*Gametek LLC v. Zynga, Inc.*
    No. CV 13-2546 RS, 2014 WL 1665090 (N.D. Cal. Apr. 25, 2014) ..................................... 16

*Gottschalk v. Benson*
    409 U.S. 63 (1972)............................................................................................. 10, 13

*I/P Engine, Inc. v. AOL Inc.*
    2014 WL 3973501 (Fed. Cir. Aug. 15, 2014).................................................................. 11, 18

*In re Roslin Inst. (Edinburgh)*
    750 F.3d 1333 (Fed. Cir. 2014)................................................................................... 9

*Le Roy v. Tatham*
    55 U.S. 156 (1852)................................................................................................ 10

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*
    No. 2:13-CV-655, slip op. (E.D. Tex. Sept. 3, 2014) .......................................................... 12

*Lumen View Tech, LLC v. Findthebest.com, Inc.*
    984 F. Supp. 2d 189, 200 (S.D.N.Y. 2013)...................................................................... 13

*Mayo Collaborative Serv. v. Prometheus Laboratories, Inc.*
    132 S. Ct. 1289 (2012) ................................................................................ 9, 14, 15, 17

*McRO, Inc. v. Namco Bandai Games America, Inc.*
    Case No. CV 12-10322-GW(FFMx), slip op. (C.D. Cal. Sept. 22, 2014)................................... 12

*Open Text S.A. v. Alfresco Software Ltd.*
    No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ............. 11, 12, 15, 17, 18

*Parker v. Flook*
    437 U.S. 584 (1978) .......................................................................................... 10, 13

*Planet Bingo, LLC v. VKGS LLC*
    2014 WL 4195188 (Fed. Cir. Aug. 26, 2014)................................................................. 11, 17

*Tuxis Techs., LLC v. Amazon.com, Inc.*
    No. 13-1771-RGA, slip op. (D. Del. Sept. 4. 2014)  .......................................................... 12

*Walker Digital, LLC v. Google, Inc.*
    C.A. No. 11-318-LPS, 2014 WL 4365245 (D. Del. Sept. 3, 2014)............................... 12, 16, 18

**Federal Statutes**

35 U.S.C. § 101 ......................................................................................... *passim*

35 U.S.C. § 102 ............................................................................................. 6

35 U.S.C. § 103 ............................................................................................. 6

**Federal Rules**

Fed. R. Civ. P. 56(a) ...................................................................................... 9

iii

866823

Please take notice that on November 21, 2014 at 9 a.m., or as soon thereafter as counsel may be heard in the above-captioned Court, LinkedIn Corp. ("LinkedIn") and Facebook, Inc. ("Facebook") (collectively "Defendants") will, and hereby do, respectfully move for summary judgment of invalidity under 35 U.S.C. § 101.

Defendants seek summary judgment based on the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

## I.       INTRODUCTION

On January 13, 2014, the Court stayed this case pending the U.S. Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) on invalidity under 35 U.S.C. § 101.  D.E. No. 133.  We now have the benefit of that decision, and it has changed the landscape for the validity of abstract computer-based claims.[1]  In the past 12 weeks, the Federal Circuit and district courts have used the *Alice* decision to invalidate claims similar to those asserted by Bascom under § 101 in no fewer than 13 cases.  As in those cases, the claims here are invalid under *Alice* because they (1) are directed to an abstract idea, and (2) do not recite any transformative inventive elements beyond a generic computer implementation.  *Alice*, 134 S. Ct. at 2355-60.

The heart of all of Bascom's asserted claims is nothing more exotic than the abstract idea of "establish[ing] relationships between document objects."  U.S. Pat. 7,139,974 ("the '974") at 3:39; U.S. Pat. 7,158,971 ("the '971") at 4:45; U.S. Pat. 7,111,232 ("the '232") at 3:5; U.S. Pat. 7,389,241 ("the '241") at 3:21-22.  Bascom's claims attempt to lay claim over a simple technique of identifying two documents and establishing a relationship between them.  The patents assert

---

[1]   Numerous commentators have recognized the dramatic impact of *Alice*.  *See, e.g.*, "Software patents are crumbling, thanks to the Supreme Court," Vox.com, Sept. 12, 2014 (summarizing 11 post-*Alice* decisions invalidating computer-related patents) (Ex. A); "Courts Nix More Software Patents," Wall Street Journal, Sept. 21, 2014 ("It's open season on software patents.  That's the message federal courts have sent in recent weeks after a U.S. Supreme Court ruling in June . . .") (Ex. B); "Section 101 Patentable Subject Matter Bloodbath," SoCal IP Law Group, Sept. 15, 2014 (discussing the impact of *Alice*) (Ex. C).  The change in the law was so dramatic that the PTO recently announced that it had withdrawn notices of allowance for patents claiming abstract ideas with generic computer functions and agreed to accept refund requests for applicants who had already paid their issue fees.  *See* "Update on USPTO's Implementation of 'Alice v. CLS Bank,'" available at http://www.uspto.gov/blog/director/entry/update_on_uspto_s_implementation (Ex. Y).  All references to exhibits refer to the Declaration of Michelle Ybarra submitted in support of this motion for summary judgment.

that this technique "provide[s] many beneficial improvements in searching, identifying and publishing information over computer networks." '974 at 3:30-37; '971 at 4:36-43; '232 at 2:63-3:3; '241 at 3:11-19.

But as explained in detail below, the idea of establishing relationships between documents is not patentable and dates back thousands of years. For example, in the third century before Christ, the catalog system at the Library of Alexandria employed the same methods as Bascom's claims, motivated by the same concerns—"to provide complete and reliable access to the holdings of the library." RUDOLF BLUM, KALLIMACHOS: THE ALEXANDRIAN LIBRARY AND THE ORIGINS OF BIBLIOGRAPHY 244 (1991) (Ex. D); *cf.* '974 at 3:1-3 (Bascom's purported invention addresses the "need to reduce the time and effort involved . . . in user searches for relevant document objects on a network").

The abstract idea behind Bascom's claims has also been a common tool of lawyers for almost two centuries. Legal citation books such as "Shepard's Citations" and "West Keynotes" identify documents (*e.g.*, legal cases) and describe relationships between them (*e.g.*, when a case cites or overrules an earlier case).[2] This technique originated at least as early as 1821, when Simon Greenleaf published an index in the United States that identified cases whose holdings had been overruled or limited by later cases and provided blank pages for the reader to record new case citations and relationships. SIMON GREENLEAF, A COLLECTION OF CASES OVERRULED, DOUBTED, OR LIMITED IN THEIR APPLICATION (1821) (Ex. E) ("*Overruled Cases*").

The Supreme Court has made clear that patents on abstract ideas—such as establishing relationships between documents—are invalid because they grant a monopoly over "the basic tools of scientific and technological work," and "might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Alice*, 134 S. Ct. at 2354. Here, the asserted claims add nothing that transforms the abstract and ancient idea of relating documents into a patent-eligible invention. The claims recite only generic and conventional computer elements such as a "computer," "network," or "server," which, under

---

[2] Though the Shepard's and West systems are implemented on computers today, those systems were originally book-based, as the Court no doubt recalls.

MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101
Case No. 12-cv-06293 SI, 12-cv-06294 SI

866823

*Alice*, "cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358. Thus, as demonstrated in further detail below, this Court should grant summary judgment that the asserted claims are invalid as a matter of law under 35 U.S.C. § 101.

## II.   BACKGROUND

### A.   The Bascom patents.

All of Bascom's asserted claims attempt to cover variations on the basic concept of establishing relationships between documents. The overlapping specifications focus on "permit[ting] a user of a computer network or the Internet to establish relationships between document objects located on the network or the Internet." '974 at 3:38-40.[3] "Such document objects may contain any form of information, from text documents and articles, financial data, statistical information, electronic mail, images and photos, music, animation, and even motion pictures." *Id.* at 1:51-55. The following claim is representative:

> A method for providing a framework for document objects located on a network, the method comprising:
>
> creating one or more link directories for storing link relationships between document objects located on the network, wherein the one or more link relationships are separate from the document objects;
>
> creating a link relationship between a first document object located on the network and a second document object located on the network;
>
> assigning attributes describing the link relationship, wherein the attributes are stored with the link relationship;
>
> presenting the link relationship with one or more of the attributes describing the link relationship.

'974 Claim 45. The other asserted claims all likewise recite "link relationships" between document objects and various permutations of features involving link relationships. *See* '974 Claims 1, 2, 5, 7-9, 31, 34, 44; '232 Claims 4-6, 12, 14; '971 Claims 14, 19-21; and '241 Claims 1, 2, 4, 17, 24, 55, 61-63, 73, 74, 78.

The claims also recite additional features relating to the relationships established between

---

[3] The four patents-in-suit are attached as Exhibits P-S to the Ybarra Declaration. The patents-in-suit are closely related, with substantially overlapping specifications. The '971 is a continuation-in-part of the '974, the '241 is a continuation-in-part of the '232, the '974 and '232 are both continuations-in-part of application No. 10/050,515, and all four patents claim priority to provisional applications filed in March 2001 and April 2001, as shown on the patents' front pages.

document objects, none of which add anything to confer patent-eligibility.  For example, the link relationships are described by attributes, which may be "descriptive, temporal, spatial, or quantitative in nature."  '974 at 8:44-62; '971 at 10:7-25; '232 at 8:26-29; '241 at 8:31-44. Attributes "may include descriptions of the content of either of the document objects [] related by the link relationship [] wherein that content may be described to include a product review, news article, product information page, competitor's product information, or product order forms, among other types of content."  '974 at 13:4-22; '971 at 14:34-52; '232 at 12:47-65; '241 at 12:46-64.  The link relationships may be stored in a "link directory," which the specifications describe as a simple "table" or a set of "relational database records."  '974 at 11:34-12:35; '971 at 12:65-17:49; '232 at 11:11-40, 13:53-14:59; '241 at 11:11-40, 13:52-14:59.  The specifications state that all of these features are implemented with conventional, generic computer equipment and unspecified software programming.  *See* '971 at 6:53-8:30, 47:56-48:8, '232 at 4:66-6:44, 30:46-63; '974 at 5:22-6:67, 34:35-52; '241 at 5:9-6:52, 39:8-25.

### B.    The Patent Office recognized the abstract nature of Bascom's claims.

The abstract nature of the idea behind the Bascom claims was expressly recognized by the Examiner during the prosecution of the '971 patent.  During prosecution of that patent, the Examiner rejected the claims based on 35 U.S.C. § 101 "because they merely recite a number of computing steps without producing any tangible result and/or being limited to a practical application within the technological arts."  Ex. F at 2-3.  Bascom only overcame these rejections by inserting the words "computer-implemented" into the claims; nothing more was added or argued to traverse the § 101 rejection.  Ex. T at 10.  Those claims were allowed because, at that time (2006), the Patent Office did not have the benefit of the Supreme Court's 2014 decision in *Alice*.[4]  Such claims would not have been allowed today.

In fact, in 2012 the Patent Office rejected all pending claims in a related Bascom patent application under § 101 because they are directed to ineligible subject matter.  *See* Ex. U at 2-3. Just like the claims asserted in this case, those rejected claims were directed to selecting

---

[4] The pending claims in Bascom's other three patent applications all already recited generic computer limitations such as a "computer," "server," and/or "network" prior to the Examiner's § 101 rejection in the '971 prosecution.

document objects, creating link references, associating attributes, and storing them in link directories.  *See* Ex. V.  Tellingly, Bascom did not challenge the PTO's rejection.  It simply abandoned the application.  Ex. W.

To ensure that claims such as the presently asserted claims no longer get through the Patent Office, on June 25, 2014, following the decision in *Alice*, the Patent Office issued new internal guidelines for examination of patents under § 101.  Ex. G.  Those guidelines make clear that phrases such as "computer-implemented" will not convert an unpatentable abstract idea into a patent-eligible invention.  *Id.*

### C.    Establishing relationships between documents is an ancient abstract idea.

The abstract idea of establishing and using "relationships between document objects" is truly ancient.  For example, "Kallimachos of Kyrene, a Hellenistic scholar and a famous poet, created [in] about 260 B.C. a fundamental list of Greek authors with biographical and bibliographical data, the first national author bibliography, based on the holdings of the Alexandrian library."  Ex. D at ix.  "Kallimachos 'invented' the library catalog and the biobibliography, and therefore bibliography as such," and created "a catalog which, unlike a mere inventory, recorded not the scrolls available in the library, but all copies of works of Greek literature that were contained in them, with biographical data" on their authors.  *Id.* at 244.

The problems Kallimachos confronted—and the solutions he provided—were remarkably similar to those Bascom described in its patent specifications two millennia later.  Bascom proposed "creating and defining relationships between document objects that are relevant to one another" in order to address the "need to reduce the time and effort involved . . . in user searches for relevant document objects on a network."  '974 at 2:45-46, 3:1-3.  Likewise, "Kallimachos tried to provide complete and reliable access to the holdings of the library," Ex. D at 244, motivated by the fact that, previously, "the contents of the numerous collective scrolls were only incompletely known," and "the data on authors and titles which had been written on [the scrolls' title tags] were partially unreliable."  *Id.* at 230.

To address these problems, Kallimachos created his *Pinakes* (Lists), which defined relationships between the documents (scrolls) in the Alexandrian library.  In particular, the

*Pinakes*:

1.    divided the authors into classes and within these classes if necessary into subdivisions [such as works on rhetoric, philosophy, and law];

2.    arranged the authors in the classes or subdivisions alphabetically;

3.    added to the name of each author (if possible) biographical data;

4.    listed under an author's name the titles of his works, combining works of the same kind [into] groups . . . , and

5.    cited the opening words of each work as well as

6.    its extent, i.e., the number of lines.

*Id.* at 153-54.   Due to the existence of "collective scrolls" containing multiple works by different authors, "he had to make a cross reference to the respective scroll, and had to note in which class and under which author it could be found, and what was the title of the work listed as the first one." *Id.* at 231.  "The titles of works that were related to each other formally or by content were listed in groups," within which "works belonging to certain categories . . . were alphabetically arranged by their first letter." *Id.* at 235.

The *Pinakes* precede Bascom's alleged invention by millennia, yet map directly onto Bascom's claims.[5]  Consider, for example, '974 Claim 45 in light of the *Pinakes*:

A method for providing a framework for document objects [**scrolls**] located on a network [**the Alexandrian library**], the method comprising:

creating one or more link directories for storing link relationships between document objects located on the network, wherein the one or more link relationships are separate from the document objects [**the *Pinakes* were separate from the scrolls** (*see* Ex. D at 150-60, 226-46)];

creating a link relationship between a first document object located on the network and a second document object located on the network [**"works . . . were related to each other formally or by content"** (*id.* at 235)];

assigning attributes describing the link relationship, wherein the attributes are stored with the link relationship [**attributes included author and title— which enabled retrieval using the scrolls' title tags—as well as subject, category, etc.** (*see id.* at 150-60, 226-46)];

---

[5] To be clear, the discussion of historical references herein is not intended to address whether the claims are novel and non-obvious over the prior art under 35 U.S.C. §§ 102-103.  They are simply meant to illustrate the abstract nature of Bascom's claims.  *See Bilski v. Kappos*, 130 S. Ct. 3218, 3236 (2010) ("the proper construction of § 101 . . . does not involve the familiar issue of novelty" under § 102); *Alice*, 134 S. Ct. at 2356 (discussing how the abstract idea at issue was "long prevalent" in the field); *buySAFE, Inc. v. Google, Inc.*, — F.3d —, 2014 WL 4337771, at *4 (Fed. Cir. Sept. 3, 2014) (discussing how the abstract idea at issue was "of ancient lineage").

6

866823

presenting the link relationship with one or more of the attributes describing the link relationship ["**scholars of the first centuries A.D. still had copies of the *Pinakes*"** (*id.* at 150)].

Over the centuries, lawyers applied the same concepts to organize and identify legal precedent among reported cases, using citation references. *See* PATTI OGDEN, MASTERING THE LAWLESS SCIENCE OF OUR LAW (1993) at 7-11 (Ex. H). By the mid-1700s, English publishers were providing indexes identifying which cases were cited by other cases. *See* FRED SHAPIRO, ORIGINS OF BIBLIOMETRICS, CITATION INDEXING, AND CITATION ANALYSIS: THE NEGLECTED LEGAL LITERATURE (1992) at 337-38 (Ex. I). In time, lawyers increasingly needed to know when holdings had been overruled or limited by subsequent cases, so in 1821 Simon Greenleaf published *Overruled Cases*—a compilation of citations to reported cases, listing the relationship between a given case and a subsequent case containing negative treatment and providing attributes such as "overruled" or "doubted." Ex E; *see also* Ex. H, Ogden at 2-7. Examples of the link relationships and attributes in *Overruled Cases* are reproduced below:

> **Adlington *v.* Cann 3. *Aik.* 141.**
> Overruled *per Thompson B.* 3. *Anstr.* 941.
>
> **Alcinbrook *v.* Hall 2. *Wils.* 309.**
> **That money lent for a purpose prohibited by law may be recovered.**
> Overruled in *Clayton v. Dilly* 4. *Taunt.* 165. *Vid. Faikney v. Reynous, post.*

Ex. E at GL0014. Greenleaf also provided that users (readers) could write in their own link relationships and attributes: "Realizing that his list would require additions and emendations, he published the volume in interleaved form (blank pages bound in at intervals)." Ex. H, Ogden at 5. The copy of *Overruled Cases* submitted herewith contains handwritten entries in those blank pages, apparently written around 1837 by one J. L. Leway. *See, e.g.*, Ex. E at GL0013, GL0018-19, GL0029- GL32.

Like the *Pinakes*, Greenleaf's work applied the same abstract ideas embodied in Bascom's claims, such as '974 Claim 45:[6]

---

[6] A claim chart illustrating how *Overruled Cases* applied the same abstract idea as each of the four patents-in-suit is submitted herewith as Exhibit L.

7

866823

A method for providing a framework for document objects [**legal cases**] located on a network [**law library or other body of case law**], the method comprising:

> creating one or more link directories for storing link relationships between document objects located on the network, wherein the one or more link relationships are separate from the document objects [***Overruled Cases* compiled a directory of citation relationships, separate from the cases**];
>
> creating a link relationship between a first document object located on the network and a second document object located on the network [**Greenleaf created relationships between cases, as compiled in *Overruled Cases*, and the user also created relationships in the blank pages**];
>
> assigning attributes describing the link relationship, wherein the attributes are stored with the link relationship [**attributes were assigned to each relationship—"overruled," "doubted," and the like**];
>
> presenting the link relationship with one or more of the attributes describing the link relationship [***Overruled Cases* presented its citation relationships to the reader**].

Similar citation indexes include the familiar Shepard's Citations, since the 1870s, and case law digests such as West's KeyCite system that established and annotated the relationships between cases. *See* Exs. H-I, (Ogden) at 23-33, (Shapiro) at 338; HOW TO USE SHEPARD'S CITATIONS (1933) at 10-14 (Ex. J) (describing Shepard's citation relationships and showing editors at work).

The same abstract idea carried forward into the age of computers.  In 1945, Vannevar Bush—a prominent scientist and advisor to President Franklin D. Roosevelt—observed that the human mind organizes and processes information not "alphabetically or numerically," but by *establishing relationships between objects*:  "The human mind . . . operates by association.  With one item in its grasp, it snaps instantly to the next that is suggested by the association of thoughts." *As We May Think*, THE ATLANTIC, July 1945, at 10 (Ex. K).  Dr. Bush predicted that this "mental process" of "[s]election by association . . . may yet be mechanized." *Id*.  To that end, he envisioned the "memex," a desktop machine for organizing and retrieving "notes, photographs, memoranda, all sorts of things"—document objects—by "associative indexing, the basic idea of which is a provision whereby any item may be caused at will to select immediately and automatically another.  This is the essential feature of the memex. *The process of tying two items together is the important thing*." *Id.* at 10-11 (emphasis added).  Users could link materials, assign attributes (such as names) to the link relationships, annotate the underlying materials, share links, and generate bills for activity, and the memex could be "operated from a distance." *See id.*

8

at 9-12.

Progress on computerized associations between document objects continued in the decades that followed.  Legal research services migrated to computers by the 1960s, and cite-checking services like Shepard's—which annotated the link relationships between cited and citing cases—were soon computerized as well.  *See* Ex. H, (Ogden) at 36-37.

Thus, Bascom's abstract idea of "relationships between document objects" has been known for centuries, and has been applied to computers since the beginning of the computer age.

## III.    ARGUMENT

Rule 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The validity of the asserted claims under 35 U.S.C. § 101, which defines patentable subject matter, is a "threshold" issue for the Court to decide as a matter of law.  *Bilski*, 130 S. Ct. at 3225; *see also*, *e.g.*, *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, — F.3d —, 2014 WL 3377201, at *2 (Fed. Cir. July 11, 2014).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)).

The Supreme Court in *Alice*, following its earlier decision in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), set forth a two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 134 S. Ct. at 2355.[7]

---

[7] The *Alice* Court attributes the test to *Mayo*, but since *Alice* describes the test more explicitly than *Mayo* did, it is referred to here as the "*Alice* test."

866823

1.      First, the Court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea.  *Id.*  If the Court determines that the claims are directed to a patent-ineligible concept such as an abstract idea, then:

2.      The Court must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."  *Id.* (citation and quotation marks omitted).  The Supreme Court describes this second step "as a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id.* (quotation marks and brackets omitted).

Applying the *Alice* test here compels the conclusion that the asserted claims are invalid under § 101.

**A.      The asserted claims are directed to the abstract idea of establishing relationships between document objects.**

The first step of the *Alice* test asks "whether the claims at issue are directed to a patent-ineligible concept," *i.e.*, whether they are directed to laws of nature, natural phenomena, or abstract ideas.  *Alice*, 134 S. Ct. at 2355.  Here, as in *Alice*, the relevant category of patent-ineligible concepts is "abstract ideas."  *See id.*  While the law has excluded abstract ideas from patent protection for more than 160 years, *see, e.g.*, *Le Roy v. Tatham*, 55 U.S. 156, 174-75 (1852), this rule has become especially important for patents involving processes performed by computers.

In *Gottschalk v. Benson*, 409 U.S. 63 (1972), for example, the Supreme Court held that a computerized method for converting binary-coded decimal numerals into pure binary numerals was not patentable; otherwise, "the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself."  *Id.* at 72.  In *Parker v. Flook*, 437 U.S. 584 (1978), the Court rejected as unpatentable a computerized method for sounding an alarm when parameters of a catalytic conversion process exceeded limits established by a mathematical formula.  *Id.* at 594-96.  More recently, in *Bilski*, the Court affirmed the rejection of claims directed to "the basic concept of hedging," which "is a fundamental economic practice long

10

prevalent in our system of commerce and taught in any introductory finance class."  130 S. Ct. at 3231 (citation and quotation marks omitted).  And most recently, in *Alice*, the Supreme Court rejected claims "drawn to the concept of intermediated settlement," which is also "long prevalent" and is "a building block of the modern economy."  134 S. Ct. at 2356 (quoting *Bilski*, 130 S. Ct. at 3231).

The Federal Circuit affirmed the invalidity of many computer-related patents under § 101 following the Supreme Court's 2010 decision in *Bilski*,[8] and additional invalidity rulings have been accumulating rapidly after *Alice*.  For example, on September 3, 2014, the Federal Circuit invalidated claims that "are squarely about creating a contractual relationship—a 'transaction performance guaranty'—that is beyond question of ancient lineage."  *buySAFE, Inc. v. Google, Inc.*, — F.3d —, 2014 WL 4337771, at *4 (Fed. Cir. Sept. 3, 2014).  In *Digitech*, the Federal Circuit affirmed the invalidity of "an ineligible abstract process of gathering and combining data." — F.3d —, 2014 WL 3377201, at *5.  "Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."  *Id*.  Recent non-precedential opinions further illustrate the trend.  *See Planet Bingo, LLC v. VKGS LLC*, 2014 WL 4195188, at *2 (Fed. Cir. Aug. 26, 2014) (affirming invalidity of claims directed to computerized bingo game); *I/P Engine, Inc. v. AOL Inc.*, 2014 WL 3973501, at *9-*12 (Fed. Cir. Aug. 15, 2014) (Mayer, J., concurring) (invalid claims directed to "system which filters information for relevance to a user's query using combined content and collaborative data").

Likewise, district courts around the country have not hesitated to invalidate claims under § 101 following the Supreme Court's guidance in *Alice*.  In *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014), Judge Donato

---

[8] *See*, *e.g.*, *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011); *Fort Prop., Inc. v. American Master Lease LLC*, 671 F.3d 1317 (Fed. Cir. 2012); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012); *Bancorp Serv. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1279 (Fed. Cir. 2012); *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013); *Compression Tech. Solutions LLC v. EMC Corp.*, No. C-12-01746 RMW, 2013 WL 2368039, *2-5 (N.D. Cal. May 29, 2013), *aff'd*, 557 Fed. Appx. 1001 (Fed. Cir. Mar 10, 2014); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, Nos. 2013–1307, 2013–1313, 2014 WL 718153 (Fed. Cir. 2014) (nonprecedential).

invalidated claims reciting a computer-readable medium and an electronic system for facilitating communications, finding that the claims recite abstract ideas for the "commonplace and time-honored practice of interacting with customers to promote marketing and sales." *Id*. at *4. In *DietGoal Innovations LLC v. Bravo Media LLC*, 13 CIV. 8391 PAE, 2014 WL 3582914, at *3 (S.D.N.Y. July 8, 2014), the court invalidated claims for "computerized meal planning," given that "humans have assuredly engaged at least in rudimentary meal-planning 'for millennia.'" *Id*. at *10 (citation omitted) (invalidating claims for computerized matchmaking). In *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, CV 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014), "the abstract idea at the heart of the claim" was even more fundamental and ancient—the claim boiled down to "the very concept of a decision," which, of course, is "is a basic mental process upon which everyone relies," and thus is not patentable. *Id*. at *3-4. In *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, No. 8:11-cv-2826-T-23TBM (M.D. Fla. Sept. 11, 2014), the claimed inventions covered "a method of and a system of automated saving or automated charitable giving" by debiting small amounts of money with each transaction—merely "a computerized application of a technique known from antiquity," as implemented in various forms over the centuries. *Id*. at 2-3. The list goes on.[9]

The asserted claims here are drawn to the concept of establishing relationships between document objects. It cannot be denied that this is a centuries-old "abstract idea." *See*, *e.g.*, *Alice*, 134 S. Ct. at 2356. In fact, the ability to create, store, and use "associations" between objects is a fundamental feature of the human mind. Ex. K at 10. Both the Supreme Court and the Federal Circuit have made clear that a method that "can be performed in the human mind, or by a human

---

[9] *See*, *e.g.*, *McRO, Inc. v. Namco Bandai Games America, Inc.*, Case No. CV 12-10322-GW(FFMx), slip op. (C.D. Cal. Sept. 22, 2014) (invalidating claims directed to "automatically animating lip synchronization and facial expression of three-dimensional characters") (Ex. CC); *Eclipse IP LLC v. McKinley Equipment Corp.*, No. SACV 14-742-GW(AJWx), slip op. (C.D. Cal. Sept. 4, 2014) (invalidating claims to a "computer-based notification system") (Ex. Z); *Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-318-LPS, 2014 WL 4365245 (D. Del. Sept. 3, 2014) (invalidating two patents directed to computerized rules for exchanging and controlling information) (Ex. EE); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, slip op. (D. Del. Sept. 4. 2014) (invalidating claims to computer-implemented "upsell offer" process) (Ex. DD); *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, No. 2:13-CV-655, slip op. (E.D. Tex. Sept. 3, 2014) (invalidating claims to computerized loyalty rewards system) (Ex. BB); *CMG Financial Services, Inc. v. Pacific Trust Bank, F.S.B.*, No. CV 11-10344 PSG (MRWx) (C.D. Cal. Aug. 29, 2014) (invalidating claims to system for automated account transactions) (Ex. AA).

866823

1  using a pen and paper . . . is merely an abstract idea and is not patent-eligible under § 101."

2  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011); *see also*

3  *Benson*, 409 U.S. at 67 (method that "can be done mentally" was an abstract idea); *Flook*, 437

4  U.S. at 586 ("the computations can be made by pencil and paper calculations").

5       A human being with pen and paper—or, in Kallimachos's time, papyrus—can perform all

6  of the steps and functions recited in the asserted claims, as illustrated in the claim chart submitted

7  herewith as Exhibit X.  For example, humans can establish an association (relationship) between

8  two objects, assign attributes (descriptions) to that relationship, use the relationship to retrieve (or

9  visualize) an object using a unique (written or mental) identifier for that object, organize the

10  relationships into groups, and perform all of the other steps and functions recited in the asserted

11  claims.  *See id.*  As the Federal Circuit has observed, "the well-known concept of categorical data

12  storage, *i.e.*, the idea of collecting information in classified form, then separating and transmitting

13  that information according to its classification, is an abstract idea that is not patent-eligible."

14  *Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*, — Fed. Appx. —, 2014 WL 718153,

15  *2-*4 (Fed. Cir. 2014) (nonprecedential).  *See also Bancorp*, 687 F. 3d at 1279 (invalidating

16  claims to abstract idea where "the computer simply performs more efficiently what could

17  otherwise be accomplished manually"); *Compression Tech. Solutions LLC v. EMC Corp.*, No. C-

18  12-01746 RMW, 2013 WL 2368039, *2-5 (N.D. Cal. May 29, 2013), *aff'd*, 557 Fed. Appx.

19  1001 (Fed. Cir. Mar 10, 2014) (invalidating claims to "information processor" including

20  computer structures for classifying and parsing packets, where "all of the claimed limitations can

21  be performed as mental processes").

22       Creating associations between documents is "a basic mental process upon which everyone

23  relies," *Comcast*, 2014 WL 3542055, at *4, and is something—like meal planning and

24  matchmaking—that humans have been doing for millennia.  *See* Ex. D; Ex. K at 10; *DietGoal*,

25  2014 WL 3582914, at *10; *Lumen View Tech, LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189,

26  200 (S.D.N.Y. 2013).  Merely "taking existing information … and organizing this information

27  into a new form" is an unpatentable abstract idea.  *Digitech*, — F.3d —, 2014 WL 3377201, *5.

28  Just as intermediated settlement is "a building block of the modern economy," *Alice*, 134 S. Ct. at

2356, the concept of relating things—like document objects—lies at the foundations of human thought, information science, legal precedent, computer science, etc.  *See* Exs. D, E, K.  Indeed, the idea of creating and using relationships between documents is both more abstract and more ancient than the concepts of intermediated settlement and hedging held to be patent-ineligible in *Alice* and *Bilski*.  *See id.*; *Alice*, 134 S. Ct. at 2356; *Bilski*, 130 S. Ct. at 3231.

Thus, Bascom's idea of establishing "relationships between document objects" falls "squarely within the realm of 'abstract ideas'" under the guidance of the Supreme Court and the Federal Circuit.  *Alice*, 134 S. Ct. at 2357.

> **B.    The asserted claims do not contain anything that transforms the patent-ineligible abstract idea into a patent-eligible invention.**

At *Alice*'s second step, "we must examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S. Ct. at 2357 (quotation marks omitted).  A valid claim must include "additional features" beyond the abstract idea itself, which "requires more than simply stating the abstract idea while adding the words 'apply it.'"  *Id.* (quotation marks and brackets omitted).  It also requires more than the recitation of "well-understood, routine, conventional activity" or technology.  *Mayo*, 132 S. Ct. at 1294.  In particular, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," particularly given "the ubiquity of computers."  *Alice*, 134 S. Ct. at 2358.  "Thus, if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility."  *Id.* (citation, quotation marks, ellipses and brackets omitted).

Here, the asserted claims do not add any "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice*, 134 S. Ct. at 2357.  They instead recite only generic and conventional computer-related limitations—some of the claimed methods are "computer-implemented," the link relationships may be stored "on one or more servers," and the document objects are "located on a network."[10]  '974 Claims 1, 2, 5, 7-9, 31, 34, 44, 45; '232

---

[10] The parties agree that a "network" is a "set of interconnected computers, such as the Internet."  D.E. No. 132 (Jan. 10, 2014 Joint Claim Construction Statement) at 1.  The Court need not conduct claim construction prior to deciding the threshold question of patent eligibility under

Claims 4-6, 12, 14; '971 Claims 14, 19-21; and '241 Claims 1, 2, 4, 17, 24, 55, 61-63, 73, 74, 78. "No special technology or programming is mentioned or envisioned in the claims." *Open Text*, 2014 WL 4684429, at *2. The patent specifications likewise describe only conventional, generic computer and network structures, to be programmed with unspecified software. *See* '971 at 6:53-8:30, 47:56-48:8, '232 at 4:66-6:44, 30:46-63; '974 at 5:22-6:67, 34:35-52; '241 at 5:9-6:52, 39:8-25; *see also*, *e.g.*, *buySAFE*, 2014 WL 4337771, at *1 (invalidating claims directed to computer transactions "via a computer network"). Those same specifications acknowledge that creating, indexing, categorizing, and searching computer networks of "document objects," such as World Wide Web objects identified by URLs and accessed through the Internet, was all well-known prior to the patents' earliest possible filing dates in 2001.[11] *See* '971 at 1:53-2:49, '232 at 1:46-2:29, '974 at 1:46-2:29, '241 at 1:49-2:32. Thus, the use of computer networks with document objects stored on servers was merely "well-understood, routine, conventional activity, previously engaged in by those in the field" at the time of Bascom's alleged inventions. *Mayo*, 132 S. Ct. at 1299-1300. During prosecution years ago, Bascom was able to overcome the Examiner's § 101 rejection by merely adding the words "computer-implemented," but under *Alice*, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358.

Accordingly, the asserted claims recite nothing more than "a mere instruction to implement an abstract idea" with software in a conventional computer network instead of on paper, which "cannot impart patent eligibility." *Alice*, 134 S. Ct. at 2358. "The claims are silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method." *Dealertrack, Inc. v. Huber*, 674 F.

---

§ 101. *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. Appx. 988, 991-92 (Fed. Cir. 2014) (rejecting argument that "claim construction must precede the § 101 analysis"). In fact, Bascom contends that the Court need not construe most of the terms in the asserted claims, and has not proposed any claim constructions that would change the outcome of the present motion. *See generally* D.E. No. 132. For purposes of this motion only, to the extent any claim construction were deemed necessary for present purposes—which it is not—Defendants will assume Bascom's proposed constructions are adopted.

[11] In fact, the claims recite only a "network," not any particular type of network. The term "network" dates back centuries, originally referring to a "net-like arrangement of threads, wires, etc." or "any complex, interlocking system" such as networks of roads and canals. *See* Ex. M (Online Etymology Dictionary entry for "network").

3d 1315, 1333-34 (Fed. Cir. 2012).  A generic computer network is "merely the environment in which the abstract idea is practiced."  *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 1665090, at *7 (N.D. Cal. Apr. 25, 2014).

Taking '974 Claim 45 as our representative claim, it is readily apparent that its elements add nothing to transform the abstract idea into a patent-eligible invention.  The first step of the method is "creating one or more link directories for storing link relationships between document objects located on the network, wherein the one or more link relationships are separate from the document objects."  '974 Claim 45.  This is simply the abstract idea of an organized set of relationships between documents that is separate from the documents itself.  If it does not require a computer, it is no different from the *Pinakes* that Kallimachos created in the third century B.C. or Greenleaf's *Overruled Cases* from 1821.  *See* Exs. D, E.  And if it is construed to require a computer, it recites nothing beyond "electronic recordkeeping—one of the most basic functions of a computer.  The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are well-understood, routine, conventional activities previously known to the industry."  *Alice*, 134 S. Ct. at 2359 (citations, quotation marks, and brackets omitted).  The Bascom specifications describe the "link directories" as conventional tables or relational databases, which were well-known for decades prior to Bascom's patents.  *See* '974 at 11:34-12:35, 14:10-33; '971 at 12:65-17:49, '232 at 11:11-40, 13:53-14:59; '241 at 11:11-40, 13:52-14:59; *see also* "A Timeline of Database History" (Ex. N); *DietGoal*, 2014 WL 3582914, at *13 ("a stored database" is "one of the most basic functions of the generic computer"); *Walker Digital, LLC v. Google, Inc.*, C.A. No. 11-318-LPS, 2014 WL 4365245, at *6 (D. Del. Sept. 3, 2014).

The remaining steps of '974 Claim 45 add nothing more to confer patent-eligibility under *Alice*.  The second step of "creating a link relationship between a first document object located on the network and a second document object located on the network," simply recites the ancient and abstract concept of relating two documents, well-known since antiquity as discussed above, as applied in a generic and conventional network context.  The third step, "assigning attributes describing the link relationship, wherein the attributes are stored with the link relationship,"

16

866823

likewise adds nothing beyond what librarians and legal researchers have done for centuries, and computers have done for decades.  And the final step, "presenting the link relationship with one or more of the attributes describing the link relationship," merely adds the act of "presenting." Relationships between documents have been presented on paper and visualized mentally for centuries, and in the computer era, displaying stored information on a monitor is certainly a "well-understood, routine, conventional activity" that cannot confer patentability on an abstract idea.  *Mayo*, 132 S. Ct. at 1294; *see also*, *e.g.*, *Accenture Global Serv., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013); *Dealertrack*, 674 F. 3d at 1333-34.  "In short," to the extent the steps require anything beyond what people have been doing for thousands of years, "each step does no more than require a generic computer to perform generic computer functions." *Alice*, 134 S. Ct. at 2359.

Bascom's other asserted claims likewise do not add any transformative inventive concept. *See Planet Bingo*, 2014 WL 4195188, at *2 ("there is no meaningful distinction between the method and system claims or between the independent and dependent claims.").  For example, the asserted '241 claims add the concept of "billing" based upon link directories, which does not confer eligibility.  '241 Claims 1, 2, 4, 17, 24, 55, 61-63, 73, 74, 78.  The abstract idea of charging money for access to stored information is centuries old, such as reflected in the commercial "circulating libraries" popular starting in the 17th century (*see* Ex. O ("History of Libraries"), *passim*), and has been widely applied for decades in the computer era, such as in online commercial legal research services since the 1960s (*see* Ex. H, Ogden at 36-37).  *See Alice*, 134 S. Ct. at 2359 ("the use of a computer to obtain data, adjust account balances, and issue automated instructions . . . are well-understood, routine, conventional activities previously known to the industry"); *Open Text*, 2014 WL 4684429, at *5 (additional limitation regarding email server "merely builds on the same basic concept" with "a decades-old technology that is certainly not inventive").  Copies of Kallimachos' *Pinakes* were presumably sold as they passed down generations; Greenleaf's *Overruled Cases* was created and sold as a commercial publication (as were Shepard's Citations and other legal citation indexes); and the memex could be programmed to print a monthly bill (Ex. K at 9).

17

866823

Similarly, asserted '232 claims 4-6, 12, and 14 recite features relating to making document objects accessible to users—the same idea as making documents available to library members in centuries past, or making documents available online to authorized users. *See also Walker Digital*, 2014 WL 4365245, at \*7-\*10 (invalidating method and computer system claims to "controlled information exchange" between users); *Open Text*, 2014 WL 4684429, at \*1-\*2, \*4 (invalidating computer and system claims directed to controlling communications between participants). The asserted '971 claims recite features for grouping and retrieving "link references," just like Kallimachos compiled the titles of scrolls and legal researchers have compiled legal case citations for centuries. Claim 34 of the '974 recites the use of "user profiles as filters," no different from filtering performed by an individual human mind, by an ancient library visitor interested in a particular subject or author, or by J. L. Leway in 1837 using his marked-up copy of *Overruled Cases* and the particular legal issue at hand. Ex. E. *See also I/P Engine, Inc.*, 2014 WL 3973501, at \*9-\*12 (Mayer, J., concurring) (invalid claims directed to "system which filters information for relevance to a user's query"). Claim 44 of the '974 recites a "computer readable medium" containing instructions for performing the recited method; but claims reciting "a computer-readable medium containing program code for performing the method" are patent-ineligible just the same as method claims. *Alice*, 134 S. Ct. at 1253.

Considering each claim as an "ordered combination" also adds nothing to confer patent-eligibility. *Alice*, 134 S. Ct. at 2359-60. As in *Alice*, the "claims do not, for example, purport to improve the functioning of the computer itself. Nor do they effect an improvement in any other technology or technical field. Instead, the claims at issue amount to nothing significantly more than an instruction to apply the abstract idea"—establishing relationships between documents, and variations thereof—"using some unspecified, generic computer." *Id.* (citations and quotation marks omitted). Under *Alice*, "that is not enough to transform an abstract idea into a patent-eligible invention." *Id.* (quotation marks omitted).

In sum, Bascom's asserted claims "add nothing of substance to the underlying abstract idea," and are therefore "patent ineligible under § 101." *Alice*, 134 S. Ct. at 2360.

866823

IV.     CONCLUSION

For the foregoing reasons, the Court should grant summary judgment and hold that the asserted claims are invalid under 35 U.S.C. § 101.

Dated:  September 26, 2014                     KEKER & VAN NEST LLP


                                        By:    /s/ Dan Jackson
                                               ROBERT A. VAN NEST
                                               DAVID SILBERT
                                               DAN JACKSON

                                               Attorneys for Defendant
                                               LINKEDIN CORPORATION

Dated:  September 26, 2014                     COOLEY LLP


                                        By:    /s/ Heidi L. Keefe
                                               MICHAEL G. RHODES
                                               HEIDI L. KEEFE
                                               MARK R. WEINSTEIN
                                               LOWELL D. MEAD

                                               Attorneys for Defendant
                                               FACEBOOK, INC.


## CONCURRENCE

I, Dan Jackson, am the ECF user whose ID and password are being used to file this MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101.  In compliance with General Order 45, X.B., I hereby attest that Heidi L. Keefe has concurred in this filing.


                                               /s/ Dan Jackson
                                               Dan Jackson

866823