RUSS AUGUST & KABAT LLP
MARC A. FENSTER - # 181067
mfenster@raklaw.com
BRIAN D. LEDAHL - # 186579
bledahl@raklaw.com
DORIAN S. BERGER - # 264424
dberger@raklaw.com
12424 Wilshire Boulevard, 12 Floor
Los Angeles, California 90025
Telephone:     (310) 826-7474
Facsimile:     (650) 826-6991

Attorneys for Plaintiff
BASCOM RESEARCH LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASCOM RESEARCH, LLC, a Virginia limited liability company,<br><br>           Plaintiff,<br><br>     v.<br><br>LINKEDIN CORPORATION, a Delaware corporation,<br><br>           Defendant. | Case No. 12-cv-06294 SI; 12-cv-06293 SI<br><br>**BASCOM RESEARCH LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101**<br><br>Date:        November 21, 2014<br>Time:        9:00 a.m.<br>Dept:        10<br>Judge:       Honorable Susan Illston<br><br>Case Filed: October 3, 2012<br><br>Trial Date:  None Set |
| BASCOM RESEARCH, LLC, a Virginia limited liability company,<br><br>           Plaintiff,<br><br>     v.<br><br>FACEBOOK, INC., a Delaware corporation,<br><br>           Defendant. | |

# TABLE OF CONTENTS

I.    STATEMENT OF ISSUES TO BE DECIDED ..................................................................1

II.   INTRODUCTION ............................................................................................................1

III.  STATEMENT OF FACTS ...............................................................................................3

    A.    Thomas Bascom's Invention...................................................................................3

    B.    Procedural History ..................................................................................................5

    C.    Claim Construction .................................................................................................6

IV.   LEGAL STANDARD .......................................................................................................7

V.    ARGUMENT ....................................................................................................................8

    A.    The Asserted Claims Are Not Directed To An Abstract Idea. ...............................8

        1.    The Asserted Claims Improve The Operation Of A Computer. ..................10

        2.    The Asserted Claims Perform a Transformation. .......................................12

        3.    The Asserted Claims Cannot Be Performed Mentally.................................13

    B.    The Asserted Claims Do Not Preempt The Field. ................................................18

    C.    Even Assuming, *Arguendo,* That The Patents Are Directed To An Abstract
        Idea, The Additional Limitations In The Claims Meaningfully Limits The
        Invention. ..............................................................................................................19

        1.    Patent Eligibility Does Not Depend On The Novelty Of Individual
            Steps Or Elements.......................................................................................20

        2.    Defendants Do Not Analyze The Claims "As A Whole." ...........................21

        3.    Defendants' Methodology Would Render Most Modern
            Technology Unpatentable. ...........................................................................22

    D.    At Best for Defendants, Material Disputed Issues of Fact Remain
        Regarding the Patentability of the Claims. ..........................................................23

VI.   CONCLUSION................................................................................................................24

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alice Corp. Pty. Ltd. v. CLS Bank Intern,*
  134 S.Ct. 2347 (2014) ............................................................................ passim

*Apple, Inc. v Sightsound Technologies, LLC,*
  CBM2013-00019 (PTAB Oct. 8, 2014) ................................................... 12

*Automated Techs, v. Knapp Logistics & Automation, Inc.,*
  2006 WL 1626912 (N.D. Ga. June 6, 2006) ............................................ 7

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014) .............................................................. 9

*Card Verification Solutions, Inc, v. Citigroup,*
  2014 U.S. Dist. LEXIS 137577, *11-12 (N.D. Il. Sept. 29, 2014) ........................................ 15

*CLS Bank Int'l v. Alice Corp. Pty,*
  717 F.3d 1269 (Fed. Cir. 2013) .............................................................. 6

*Conoco, Inc. v. Energy & Environmental Int'l, L.L.C.,*
  460 F.3d 1349 (Fed. Cir. 2006) .............................................................. 7

*Cooper Techs. Co. v. Thomas & Betts Corp.,*
  2008 WL 438339 (E.D. Tex. Feb. 15, 2008) .......................................... 7

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2010) .............................................................. 14

*Diamond v. Chakrabarty,*
  447 U.S. 303 (1980) ............................................................................ 9, 22

*Diamond v. Diehr,* 450 U.S. 175 (1980) ................................................... 2

*France Telecom S.A. v. Marvell Semiconductor Inc.,*
  2014 U.S. Dist. LEXIS 52564 (N.D. Cal. Apr. 14, 2014) ........................... 19

*Helios Software, LLC v. SpectorSoft Corp.,*
  2014 WL 4796111 (D. Del. Sept. 18, 2014) ........................................... 10

*In Helios Software, LLC v. Spectorsoft Corp.,*
  2014 U.S. Dist. LEXIS 135379, *53-54, C.A., No. 12-081-LPS (Sept. 25, 2014) ................. 15

*LG Display Co., Ltd. v. AU Optronics Corp.,*
  2010 WL 545921 (D. Del. Feb. 16, 2010) ............................................. 7

*Molecular Pathology v. Myriad Genetics, Inc.,*
  133 S. Ct. 2107 (2013) ........................................................................ 9

*U.S. Bancorp v. Solutran, Inc.,* Case No. CBM2014-00076, 2014 WL 3943913 (PTAB
  Aug. 7, 2014) ..................................................................................... 12

*Ultramercial, Inc. v. Hulu, LLC,*
  722 F.3d 1335 (Fed. Cir. 2013) ...................................................... passim

iii

1

**Other Authorities**

2    35 U.S.C. § 101 ...................................................................................................... i, 1, 6

3    35 U.S.C. §101 .............................................................................................................6

4    35 U.S.C. §103 .............................................................................................................4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. § 101
Case Nos. 12-cv-06294 SI / 12-cv-06293 SI

## I.   STATEMENT OF ISSUES TO BE DECIDED

To overcome the problems and shortcomings with conventional searching on the World Wide Web, Thomas Bascom invented a system called LinkSpace that "permits a user of a computer, information access device, a computer network, or the Internet, to establish and/or search relationships between document objects located on the device, network or the Internet."[1] Mr. Bascom's invention has been fundamental to Defendants' websites.

Having used Mr. Bascom's inventions to make their services work efficiently and scalably, Defendants now seek to avoid their infringement by arguing that Mr. Bascom's significant inventions should not be patentable.  Defendants' attempt to avoid their infringement should be rejected.

1.   Is Mr. Bascom's system for storing, publishing, and authorizing access to information on a computer network an abstract idea?

2.   Is Mr. Bascom's invention patent ineligible despite describing a specific computer system design?

3.   Does Thomas Bascom's invention of specific data structures preempt ***all possible implementations of*** "establishing the relationships between documents?"[2]

## II.   INTRODUCTION

Bascom Research, LLC ("Bascom") respectfully submits this opposition to Defendants' Motion for Summary Judgment of Invalidity Pursuant to 35 U.S.C. § 101 ("Def. Mot.") (Dkt. 140).[3]  Defendants argue that the patents-in-suit ("Bascom patents")[4] are directed to the abstract idea of a "identifying two documents and establishing a relationship between them," and that the patents merely took the pen-and-paper implementation of this idea, and claimed performing it on a computer.  Def. Mot. at 2 & 13.  However, Defendants grossly mischaracterize the detailed

---

[1] U.S. Patent No. 7,389,241, col. 3, ll. 20-25 (Ex. 1).  Except where noted all references to exhibits refer to the Declaration of Dorian S. Berger submitted in support of this motion for summary judgment.

[2] Def. Mot. at 1.

[3] For convenience, Bascom cites the docket numbers from the LinkedIn action (Case No. 12-cv-06294-SI).  The Facebook case docket contains the same papers cited herein.

[4] U.S. Pat. 7,139,974 ("the '974")(Ex. 2); U.S. Pat. 7,158,971 ("the '971") (Ex. 3); U.S. Pat. 7,111,232 ("'232") (Ex. 4); U.S. Pat. 7,389,241 ("the '241") (Ex. 1) (collectively, "patents-in-suit" and "Bascom Patents").

1

claims of the patents-in-suit, which require far more than a "relationship between two documents." *Id.* at 13   Moreover, all the claims include numerous innovative concepts and an implementation of a computer system that have no analogue in the "pen-and-paper" prior art.

Defendants' motion fails at both steps of the *Alice* test: the claims are not directed to an "abstract idea," and even if the Court were to conclude that they are, the claims contain numerous "inventive concepts" that amount to "significantly more" than a patent on that abstract idea. *See Alice Corp. Pty. Ltd. v. CLS Bank Intern*, 134 S.Ct. 2347, 2354 (2014).   Thus, denial of Defendants' motion is required.

*First*, the claims are not directed to an abstract idea.   The Bascom Patents do not attempt to capture all possible computerized implementations of "connecting two documents."   Def. Mot. at 2.   In fact, Defendants' analysis of the independent claims (let alone the thirty dependent claims) is so cursory that they failed to notice that the independent claims, as well as all the dependent claims, require a "link directory," *i.e.*, a particular computer structure.   Moreover, Defendants contend that the patent is directed to an "ancient and abstract concept," (Def. Mot. at 16) yet, Defendants' argument shows that the abstract idea that they identify is not the concept here.   Defendants attempt to argue that footnoting a document is covered by the claims here.   *Id.* at 2.   Defendants neglect to mention that the Bascom Patents require a link directory and other computer specific structures that are specific to, and clearly not present in, the alleged prior art.

*Second*, the Bascom Patents contain specific limitations that further render the subject matter of the invention patent eligible.   Specifically, the asserted claims recite specific steps for authorizing users to access data, bill users, manage accessibility, as well as improved data structures for performing these tasks.   These claims are in no way comparable to the types of abstract claims that Courts have held to be patent ineligible for lacking meaningful limitations and preventing all possible implementations of an abstract idea or formula.   Rather, the asserted claims are comparable to those in *Diamond v. Diehr,* and its progeny, where courts found the claims at issue patentable as novel specific implementations of an idea, not an attempt to patent an abstract idea itself.   Defendants impermissibly "dissect the claims into old and new elements

and then [] ignore the presence of the old elements in the analysis."  450 U.S. 175, 188 (1980).
The Supreme Court recently reaffirmed this holding in *Alice v. CLS Bank*, recognizing "the
general rule that patent claims 'must be considered as a whole.'"  *Alice Corp. Pty. Ltd. v. CLS
Bank Int'l*, 134 S. Ct. 2347, 2355 n.3 (2014) (quoting *Diehr*, 450 U.S. at 188).[5]

 *Third*, the factual record remains in dispute, necessitating denial of Defendants' motion.
Claim construction has yet to occur and discovery (at Defendants' request) was stayed.  Dkt. 133.
The Federal Circuit has held that § 101 requires determination of factual issues, such as the
presence of limitations that "tie the claims to specific applications of an otherwise abstract
concept," and "the scope of preemption."  *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335 (Fed.
Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2870 (2014).  The Supreme Court in *Alice* also
explained that claims that "improve[] an existing technological process" are patentable.  *Alice*,
134 S. Ct. at 2358.  The facts established by Bascom in the declaration of Professor Craig Wills
(Declaration of Professor Craig Wills ("Wills Decl.")), demonstrate that the claims are tied to
specific applications (*Id*. ¶ 15), improve computer operations (*Id*. ¶¶ 26-27), and do not preempt
the broader use of a formula or abstract concept (*Id*. 16).  Taken in the light most favorable to
Bascom, these facts require denial of summary judgment.

## III. STATEMENT OF FACTS

### A. Thomas Bascom's Invention

 As explained by the Bascom Patent specifications, users may access a wide variety of
documents on a collection of interconnected networks called the Internet through the World Wide
Web.[6]  Documents on the World Wide Web are "organized and accessed by assigning document
objects an address, or Uniform Resource Locator ('URL').  These URLs define the transfer
protocol for and location of each individual document object on the Internet, or other network,
including the Internetworking Protocol ('IP') address of the host computer system of the

---

[5] Defendants' analysis does precisely the opposite – rather than look at the claims as a whole,
Defendants ignore the claim elements unhelpful to their argument as "generic" or "conventional,"
and proceed to look at each remaining claim element in isolation.
[6] Exhibit A, '241 Patent, col. 1, ll. 59-63.

document object."[7]

But "[A]s the amount of information available on computer networks, and on the Internet in particular, grows exponentially, existing search and information location techniques become increasingly less effective.  Existing Internet search techniques often yield too many seemingly related references which are not, in fact, truly useful to the user."[8]  Accordingly, at the time of the invention of the 'Bascom Patents, there existed a need to "to enhance the network user's information search and access experience."[9]  More particularly, there existed a need *to* "provide network users with information relevant to the individual document object they are accessing and provide that information in a context of value to them by presenting relationships the document object they are accessing participates in with other document objects within a specific context."[10]  There also existed a need "to enable users to derive value and/or revenue from the process of collecting and sharing search experiences with other users."[11]

To overcome the problems and shortcomings with conventional searching on the World Wide Web, Mr. Bascom invented a system called Linkspace.  In particular, "Linkspace allows a network user to be presented with a selection of links to document objects related to the document object the user is currently accessing based upon the URL of the current document object, and link relationships created by the user and other users of the network stored in the link directories."[12]

The link relationships created and stored with Linkspace establish "meaningful relationships" between two document objects by comprising "two pointers, one each to the first document object [] and the second document object, and <u>attributes describing characteristics of the relationship between the two document objects</u>."[13] With Linkspace a user may make "link relationships accessible to users of the network and … [allow] users to fill the link directories

---

[7] *Id.* at col. 1, l. 65 – col. 2, l. 2.
[8] *Id.* at col. 2, ll. 18-24.
[9] *Id.* at col. 2, ll. 33-34.
[10] *Id.* at col. 2, ll. 35-41.
[11] *Id.* at col. 2, ll. 60-62.
[12] *Id.* at col. 3, ll. 30-35.
[13] *Id.* at col. 5, ll. 51-52

4

with link relationships between document objects."[14]  Linkspace also includes "a step of billing users based upon the activity of users accessing the link directories."[15]

Defendants' chief substantive argument is that Bascom has improperly attempted to patent the abstract idea of "linking documents,"[16] or a generic computer implementation of this concept. *Id.*  Yet, the Bascom patents do not attempt to capture all possible computerized implementations of "linking documents" using a computer.  In fact, Defendants' analysis fails to recognize that the asserted independent claims contain limitations that narrow the claims to a very specific implementation.  As Professor Wills explains in his declaration, the Bascom Patents are directed at a specific implementation of publishing and linking content on computer network.  Wills Decl. ¶¶ 15-19.  Despite Defendants' statements, the claims in the Bascom Patents do not cover "footnotes," "creating associations," or "collective scrolls."  *Id.*, ¶¶ 16, 26; Def. Br. at 6.

Defendants are also wrong in their contention that the claims merely automate what was already in the alleged prior art.  Defendants are improperly and prematurely attempting to litigate anticipation and obviousness on a motion about patent eligibility.  This motion, of course, is not about anticipation or obviousness, but about patent-eligible subject matter.  Nonetheless, if the Patent Office had been convinced that the claims of the Bascom patents were directed to the mere obvious "linking" of documents, it would have rejected the claims under 35 U.S.C. §103.  Instead, the claims of the Bascom Patents were issued over a very thorough disclosure of the prior art.

## B.    Procedural History

This case was filed over two years ago.  Dkt. No. 1.  Eight months ago, Defendants asked this Court to stay this litigation pending the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l* ("*Alice*"), 134 S. Ct. 2347 (2014).  Defendants assured the Court "[a] stay will be brief—approximately five months" (Dkt No. 99 at 2), and the "Supreme Court [would] definitively declare[] Bascom's patents invalid."  *Id.* at 1.  Neither of Defendants' predictions came true.  The stay of this case lasted 10 months and the *Alice* decision merely confirmed the Supreme Court's

---

[14] *Id.* at col. 3, l. 65 – col. 4, l. 1.
[15] *Id.* at col. 4, ll. 3-4.
[16] Def. Mot. at 12.

prior analysis in *Bilski* and *Mayo* – an analysis that confirms that the Bascom Patents claims patent-eligible subject matter.

### C.    Claim Construction

Bascom has repeatedly stated that, given the specific language used in the Bascom Patents, claim construction is critical to a determination of patent eligibility of the patents-in-suit. Dkt. Nos. 129.  Defendants appear to agree: they identified sixteen groupings of claim terms in need of construction in the Joint Claim Construction Statement.  Dkt. No. 107 at 1-24.  Further, the parties collectively identified ten terms that were "most significant to the resolution of the case." *Id*. at 24-25.  These disputed claim terms necessarily influence any analysis of the Bascom Patents under § 101.  In requesting a stay pending the outcome of *Alice*, Defendants' own briefing recognized that absent a blanket rule invalidating software patents, "the Court may need to construe additional terms, or construe terms again, if the Supreme Court articulates a new test for patentability."  Dkt. 99 at 6.

Moreover, *Alice* did not modify or overrule binding Federal Circuit precedent holding that where, as here, claim terms are in dispute, claim construction is a prerequisite for patent eligibility analysis.  *See Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (Not requiring claim construction as terms were not in dispute but finding that "if there are factual disputes, claim construction should be required"); *CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269, 1282 (Fed. Cir. 2013) (en banc) (Not conducting formal claim construction as the parties had stipulated to the constructions and finding that "one cannot meaningfully evaluate whether a claim preempts an abstract idea until the idea supposedly at risk of preemption has been unambiguously identified.").  Here, multiple claim terms are disputed by the parties, making claim construction a necessary prerequisite to any Section 101 inquiry.

Further, Facebook filed a petition for covered business method ("CBM") review of the '241 patent with the United States Patent Trademark Office on May 22, 2014.  Facebook did not seek review on Section 101 grounds.  Dkt. No. 139.  Instead, Facebook argued that the '241 patent was obvious.  Notably, Facebook's CBM petition sought construction of five claim terms that departed from the constructions proposed to the court in its joint claim construction

statement.  Ex. 5.  In view of the new constructions offered by Facebook, Bascom requests this

Court adopt claim constructions that mirror those that Bascom proposed in view of Facebook's

CBM.[17]

| Claim Term | Construction | Support |
|---|---|---|
| Link Relationship | A structure having one or more pointers connecting two or more document objects and identifying one or more link relationship attributes. | '214 Patent (Ex. A), at ll. 47-55; col. 5 ll. 25-27; col. 5, ll. 45-49. Fig. 1. |
| Link Relationship Attribute | Information describing ways in which two or more document objects are related. | '241 Patent (Ex A), col. 8. lines 27-37; col. 5, ll. 51-52. |

## IV.    LEGAL STANDARD

The Supreme Court in Alice articulated a two-step framework for analyzing patent-

eligibility under 35 U.S.C. § 101.  First, the Court must determine whether the claims at issue are

directed to "patent-ineligible concepts," namely, "laws of nature, natural phenomena, and abstract

ideas."  *Alice*, 134 S. Ct. at 2355.  If so, the Court conducts a search for an "inventive concept,"

an "element or combination of elements that is sufficient to ensure that the patent in practice

amounts to significantly more than a patent upon the [ineligible concept] itself."  *Id*. (quoting

*Mayo*, 132 S. Ct. at 1294)  In this second step, the claim elements must be considered both

"individually" and "as an ordered combination" to determine whether the "additional elements,"

---

[17] As the Federal Circuit has made clear, "district courts may engage in 'rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.'" *Conoco, Inc. v. Energy & Environmental Int'l, L.L.C.,* 460 F.3d 1349,1359 (Fed. Cir. 2006) (citations omitted).  For this reason, courts generally allow for modifications in proposed claim constructions as cases proceed, and consider proposed new constructions that serve the ultimate goal of arriving at a correct construction. *See LG Display Co., Ltd. v. AU Optronics Corp*., 2010 WL 545921, at *7-8 (D. Del. Feb. 16, 2010) (citing duty to independently construe claims, after defendant had changed its proposed construction, and adopting a construction incorporating elements of the defendant's new claim construction position); *Cooper Techs. Co. v. Thomas & Betts Corp*., 2008 WL 438339, at *4, 6 (E.D. Tex. Feb. 15, 2008) (noting that the defendant's proposed construction changed from its position in the joint claim construction statement and adopting construction that incorporated a portion of the defendant's new claim construction position); *Automated Techs, v. Knapp Logistics & Automation, Inc*., 2006 WL 1626912, at *9, n. 7 (N.D. Ga. June 6, 2006) (noting that the defendant's current claim position was "slightly modified" from the one originally proposed in the joint claim construction statement but that it "has considered this later iteration of the definition").

*i.e.*, those that go beyond the patent-ineligible concepts, "transform the nature of the claim" into patent-eligible subject matter. *See id.*

Analysis of patentable subject matter under 35 U.S.C. § 101, "while ultimately a legal determination, is rife with underlying factual issues." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2870 (2014). The Federal Circuit has explained:

> [T]he § 101 inquiry requires a search for limitations in the claims that narrow or tie the claims to specific applications of an otherwise abstract concept. Further, factual issues may underlie determining whether the patent embraces a scientific principle or abstract idea. If the question is whether "genuine human contribution" is required, and that requires "more than a trivial appendix to the underlying abstract idea," and were not at the time of filing "routine, well-understood, or conventional," factual inquiries likely abound. Almost by definition, analyzing whether something was "conventional" or "routine" involves analyzing facts. Likewise, any inquiry into the scope of preemption— how much of the field is "tied up" by the claim—by definition will involve historic facts: identifying the "field," the available alternatives, and preemptive impact of the claims in that field.

*Id.* (internal citations omitted).

To the extent that any of these facts are disputed, summary judgment is not appropriate. Furthermore, in order for Defendants to prevail, they must present clear and convincing evidence of patent ineligibility, as all issued patents are entitled to a presumption of validity. *Id.* at 1338-39; *CLS Bank Int'l v. Alice Corp. Pty. Ltd*, 717 F.3d 1269, 1305 (Fed. Cir. 2013).

## V.   ARGUMENT

### A.   The Asserted Claims Are Not Directed To An Abstract Idea.

The first step of the two-step Alice analysis requires the Court to determine, separately, whether each of the thirty six asserted claims of the Bascom patents is directed to an "abstract idea." Because the claims are plainly not directed to an "abstract idea," the inquiry must end, and Defendants' motion must be denied.

Defendants fail to articulate an "abstract idea" to which the claims are supposedly directed. The claims of the Bascom patents narrowly claim a specific type of data structure for linking data.

As such, the claims of the Bascom patent are fundamentally different from the types of claims that prior cases have held to be patent-ineligible.  The Supreme Court has emphasized that the patent system should not grant a monopoly over "the basic tools of scientific and technological work," lest the patent system tie up the "building blocks of human ingenuity." *Alice*, 134 S. Ct. at 2354 (2014) (*quoting Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2109 (2013).  As the Supreme Court has held*,* "Einstein could not patent his celebrated law that E = mc 2; nor could Newton have patented the law of gravity." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  Plainly, the Bascom patents are not attempting any such thing.

In *Alice,* the Supreme Court held that "[o]n their face," the claims at issue were "drawn to the concept of intermediated settlement, *i.e.*, the use of a third party to mitigate settlement risk." *Alice,* 134 S. Ct. at 2350.  The Court continued that, "[l]ike the risk hedging in *Bilski*, the concept of intermediated settlement is 'a fundamental economic practice long prevalent in our system of commerce,' and the use of a third-party intermediary (or "clearing house") is a building block of the modern economy." *Id.* (*quoting Bilski*, 561 U.S. at 599).  Following this precedent, the Federal Circuit found invalid claims that "are squarely about creating a contractual relationship— a 'transaction performance guaranty'—that is beyond question of ancient lineage." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

By contrast, district courts following *Alice* have rejected attacks under § 101 where the accused infringer failed to show that this type of subject matter is at issue.  *See, e.g., Helios Software, LLC v. SpectorSoft Corp.,* 2014 WL 4796111, *17 (D. Del. Sept. 18, 2014).  In *Helios,* the challenged patents were "drawn to remotely monitoring data associated with an Internet session and controlling network access."  The court rejected arguments that this subject matter was not patentable, holding that the accused infringer "[made] no effort to show that these ideas are fundamental truths or fundamental principles the patenting of which would pre-empt the use of basic tools of scientific and technological work." *See id.*  There is no "fundamental truth," "fundamental economic practice" or "basic tool of scientific and technological work" at issue in

the Bascom Patents.  Nor is Bascom attempting to capture a monopoly over every kind of "document relationship," "footnote," or otherwise.

Bascom does not dispute that information has been "linked," "footnoted," and "referenced" for hundreds of years," Defs. Mot at 7, but Bascom is certainly not trying to patent footnoting.  Defendants' attempt to characterize the Bascom patents as being fundamentally about "establishing relationships between documents" is a transparent effort to create a superficial resemblance to *Alice, Bilski,* and *buySAFE,* but for the reasons detailed above, that shoe simply does not fit.  Defendants provide no example of a case in which narrowly-drawn patents like the Bascom Patents, covering a highly specific structuring of data implemented on a computer, has been invalidated under §101. Because Defendants cannot get past the "first step" of the *Alice* analysis in showing that the claims of the '969 patent are directed to a patent-ineligible concept, their motion must be denied.

Finally, it is worth noting what *Alice* does and does not say about software patents.  *Alice* does *not* hold that all processes performed on a computer are unpatentable.  *Alice* holds that if a method is directed to an abstract concept, the "mere recitation of a generic computer" does not transform that abstract idea into patent-eligible subject matter.  *Alice,* 134 S. Ct. at 2358.  *Alice* does *not* say the converse, namely, that anything implemented on a computer is by its nature "abstract."  *See id.*  If the Supreme Court had intended to take a dramatic step in *Alice*, such as wiping out software patents altogether, it would have said so.  But it did not.  Thus, a patent that has software functionality that is narrowly drawn and does not attempt to, *e.g.*, claim a monopoly over an entire form of communication, is not "directed to a patent-ineligible concept," and therefore, is statutory subject matter.  *See id.* at 2355; *see also Helios,* 2014 WL 4796111, *17.

### 1.    The Asserted Claims Improve The Operation Of A Computer.

For years prior to the invention of the patents-in-suit, different techniques were used for indexing and retrieving documents on the internet.  One such prior art method was bookmarking webpages.  Wills Decl. 10; '241 Patent, Col. 2:5-10.  Bookmarking webpages provided a reliable way for computer users to retrieve information.  Wills Decl. ¶ 16.  However, bookmarking

content faced limitations as the amount of information on a computer network grew. As a result, technologies available to users imposed speed and/or power limitations on the functionality of a computer. The patents-in-suit introduced a new type of mechanism for making document objects (*e.g.*, webpages) available and accessible on a network. The claimed methods and apparatuses generate a link relationship that is stored separately from a document object and relates document objects to one another. Wills Decl. ¶¶ 15, 17. This system allows computers to more quickly locate relevant information in response to requests from a user. Further, by the storing of document object attribute information separately from the document object, is one aspect of the invention that enables computers more efficiently manage authorizing access to document objects. Wills Decl. ¶ 26.

The Bascom Patents allow computers to retrieve documents more quickly. Notably, the use of a computer in *Alice* did not "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field," both of which would have constituted more than mere generic computer implementation. *Id.* at 2359. The only improvements were generic advantages associated with ***any*** computer-implemented process. *See* Oral Argument Transcript, *Alice v. CLS Bank*, at 15:23-16-12 (Mar. 31, 2014) (Breyer, J.) (noting that computer implementation makes any abstract idea faster and more efficient). The generic computer recited in *Alice* did not propose any novel or unconventional ways of performing any of the recited functions – creating records, obtaining data, adjusting account balances, and issuing automated instructions – had nothing to do with how the generic computer operated or performed these functions. Had the claims in *Alice* proposed methods that improved the computer's performance of any of these functions, the Supreme Court opined such claims would be patent eligible. *Alice*, 134 S. Ct. at 2359-60.

The Bascom Patents, by contrast, claim Link Relationships and Link Directories that offer an improvement over prior art information retrieval systems. Wills Decl. ¶ 26. As Professor Wills explains, the Link Relationships, and the claimed methods and apparatuses that use those relationships, provide improved access to document objects. *Id.* Accordingly, the claims as a

whole are directed to more than just a generic computer implementation of an abstract concept; they are directed to specific methods and apparatuses that improve the operation of computers. *See Alice*, 134 S. Ct. at 2358.  Defendants offer no evidence to the contrary.

Recent PTO decisions also make clear that specific technological elements that improve and transform data through technological processes are not abstract. *See, e.g., Apple, Inc. v Sightsound Technologies, LLC*, CBM2013-00019, *18-19 (PTAB Oct. 8, 2014) (rejecting petitioner's argument that the patent was directed to an abstract idea and ruling that "[t]he claim recites a specific combination of computer components, at specific locations, that interact in a specific way to accomplish the steps of the method. . . . The 'first memory,' 'second memory,' 'transmitter,' 'receiver,' and 'telecommunications line' components, and the specific functions performed using those components, represent meaningful limitations on the scope of the claim that take it beyond the abstract concept of selling music."); *PNC Bank v. Secure Access, LLC*, Ex. 6 at 20 ("Claim 1, as a whole, relates to a computer-implemented method to transform data in a particular manner—by inserting an authenticity key to create formatted data, enabling a particular type of computer file to be located and from which an authenticity stamp is retrieved. On its face, there is nothing immediately apparent about these physical steps that would indicate the claim is directed to an abstract idea."); *U.S. Bancorp v. Solutran, Inc.,* Case No. CBM2014-00076, 2014 WL 3943913 (PTAB Aug. 7, 2014) (finding that the patent's "core concept" "is a method of processing paper checks, which is more akin to a physical process than an abstract idea.  Indeed, there is nothing immediately apparent about this basic, core concept that would indicate that it is directed to an abstract idea at all.").  Claim 45 of the '974 patent does not just include an improvement in terms of speeding up the ability to access and link documents on a computer network, it recites particular technological improvements to a document linking system, including implementing link directories containing link relationships and attributes that describe the link relationship.

## 2.    The Asserted Claims Perform a Transformation.

Each of Bascom's patents provide a computer implemented method to transform data in a particular manner.  Wills Decl. ¶ 28; *See PNC Bank v. Secure Access*, LLC, Ex. 6 at 7.  Not only

12

does Bascom insert a link relationship ("key") into a link directory to create formatted data, it creates new data in an entirely different format.  Thus, enabling a particular type of relationship to be located and from which a document object is retrieved.   Wills Decl. ¶ 28.  Bascom's claimed invention, "Linkspace[,] consists primarily of  a system and method for creating and publishing **link relationships**, a system and method for storing and managing link relationships in link directories, and a system and method for searching and presenting a network user with links related by link relationships to the document objects the user is currently accessing."  See '241 Patent Col 3 lines 55-60 (emphasis added).  To that end, the asserted claims transform object data into relationship data by creating explicit relationships between document objects (see Claim 1 of the '241 Patent including the limitation for creating one or more link directories storing one or more link relationships between document objects). This allows users of a network to search relationships between document objects and provide other users access to relationships between document objects located on the network (*see* for example Claim 14 of the '971 patent and Claim 1 of the '241 patent).   Conversely, Claim 4 of the 232 Patent and Claim 14 of the '971 patent claim transformations of relationship data to object data (See '232 Patent "enabling the users of the network to use the link relationship to retrieve [a] second document object"; see also '971 Patent "This transformation of object data into relationship data further allows retrieval of documents given attributes of relationships stored in the one or more link directories.  (*see* Claims 14, 19, 20 and 21of the '971 patent transforming a selection of one or more first link relationship attributes to a display of).  The one or more Link directories can be directly accessed with either document object or relationship attribute data and return either document object or relationship attribute data.  Not only can the document objects and relationships be directly accessed, they can be displayed or otherwise processed and used. This represents a transformation.  *PNC Bank at 20.*

### 3.       The Asserted Claims Cannot Be Performed Mentally.

Defendants alternatively contend that the asserted claims are unpatentable "mental processes" – methods that can be performed entirely in the human mind.  The "mental process" exception, however, is narrowly limited to claims that can **entirely** be performed in the human

mind, or using pen and paper.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2010) (finding claims unpatentable because "*All* of claim 3's method steps can be performed in the human mind, or by a human using a pen and paper" (emphasis added)); *In re Comiskey*, 554 F.3d 967, 980 (Fed. Cir. 2009) ("[T]his court and our predecessor court have refused to find processes patentable when they *merely* claimed a mental process *standing alone* and untied to another category of statutory subject matter even when a practical application was claimed." (emphasis added)).  *See also Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1329-30 (Fed. Cir. 2011), *vacated on other grounds*, 132 S. Ct. 2431 (2012) ("The eligibility exclusion for *purely* mental steps is particularly narrow.").  Claims where "the use of a computer is required to perform the claimed method" cannot, "as a practical matter, be performed entirely in the human mind." *Cybersource*, 654 F.3d at 1376.

In general, the types of claims that courts have rejected as "mental processes" are methods that not only can be, but frequently are, performed entirely by humans mentally or using pen and paper.  For example, in *In re Comiskey*, the Federal Circuit rejected claims directed to "[a] method for mandatory arbitration resolution" that the patentee conceded did not require a machine.  554 F.3d at 981.  In *Cybersource*, the Court rejected claims reciting "a method and system for detecting fraud in a credit card transaction" that could be performed on any set of transactions, with or without a computer.  654 F.3d at 1372-73.  In *In re Schrader*, the Court rejected claims directed to "[a] method of competitively bidding on a plurality of items" that required no "physical effect or result" except for recording the bids – which could be done by writing the bids on a piece of paper.  22 F.3d 290, 292-93 (Fed. Cir. 1994).  The common theme among these cases is that the claims were directed to processes that humans had performed without machines for years.

As in *Helios Software* and *Card Verification Solutions,* Defendants' unsupported—and factually incorrect—assertions cannot meet their high burden to invalidate the Bascom patents' claims.  S*ee In Helios Software, LLC v. Spectorsoft Corp.,* 2014 U.S. Dist. LEXIS 135379, *53-54, C.A., No. 12-081-LPS (Sept. 25, 2014), (granting summary judgment of patentability over

14

naked attorney argument that "remotely monitoring data associated with an Internet session and controlling network access" are abstract ideas); *Card Verification Solutions, Inc, v. Citigroup*, 2014 U.S. Dist. LEXIS 137577, *11-12 (N.D. Il. Sept. 29, 2014) (denying motion to dismiss on § 101 grounds because "the question whether a pseudorandom number and character generator can be devised that relies on a algorithm that can be performed by a human with nothing more than pen and paper poses a factual question inappropriate at the motion to dismiss stage. . . . Here, an entirely plausible interpretation of the claims include a limitation requiring pseudorandom tag generating software that could not be done with pen and paper."). An entirely plausible, and indeed, the correct, interpretation of Claim 45 of the '974 patent requires a computer network and the implementation of specific network architecture for placing files on the network and linking the files together in a specific data structure (a link directory containing link relationships) that cannot be performed in the human mind or with pen and paper.



Figure 3a in the '232, '974, '971 and '241 Patent showing the structure of the claimed invention with Link Directories stored separately from Document Objects. (Annotations added).

Unlike claims that have been invalidated as claiming a purely "mental process", the Bascom Patents are directed to technology, not human processes. The asserted claims – creating Link Relationships and storing them in a Link Directory – provides a solution to a problem inherent and unique to documents and files on a computer network. Wills Decl. ¶¶ 25-28. Communication problems experienced by humans, on the other hand, are not a result of complex organizational and retrieval systems, and are ultimately better resolved through non-technical means. Wills Decl. 11. The mere fact that the claimed file organization system can be *represented at a very high-level* (one that would not be capable of performing the steps) using pen and paper is insufficient to conclude that the claim is a "mental process." *TQP Dev., LLC v. Intuit Inc.,* No. 12-cv-180, 2014 WL 651935, at *4 (E.D. Tex. Feb. 19, 2014) (Bryson, J.) (finding that a "several-step manipulation of data that, except perhaps in its most simplistic form, could

not conceivably be performed in the human mind or with pencil and paper" did not constitute a "mental process").



Figure 4a in the '232, '974, '971 and '241 Patent showing the structure of a link director containing: a link relationship table, link relationship attributes, a direction indicator and a first and second link reference.  (Annotations added).

        In addition, the claims of the patents-in-suit cannot be performed entirely mentally or using pen and paper.  As discussed *supra*, each claim expressly requires a network to make document objects accessible.  These machine-oriented limitations preclude any of the asserted claims from being performed entirely mentally or with pen and paper.  For example, a human cannot (on his or her own) receive, transform, or transmit a request for a file located on a network.  Wills Decl. ¶¶ 15-19.

**B.     The Asserted Claims Do Not Preempt The Field.**

Another indication that the Bascom Patent claims are not improperly claiming an "abstract idea" itself is that they do not preempt all uses of a computer to link documents and files, or for that matter for managing user access to files, billing users for access, and retrieving files. See *Alice*, 134 S. Ct. at 2354 (the "concern that drives" the §101 analysis is "one of pre-emption").

For example, it is entirely possible to envision a system that does not perform the claimed step, "storing the link relationship in one or more link directories" when a computer system links files to one another. Instead, a computer could store the link relationship between the files with one or both of the files. Indeed, this would be much more analogous to the alleged "Footnote" prior art cited by Defendants. Def. Br. at 9-10.

It is also entirely possible to envision a system that does not perform the steps, "providing the users of the network access to the link relationship" and "enabling the users of the network to use the link relationship to retrieve the second document object, wherein the link relationship provides the users of the network with information relating the second document object to the first document object accessed by the users of the network." Moreover, it is possible to envision a computerized system for linking files that does not perform the claimed step of "billing users" or "granting access based on the link relationship." Instead, the system could, for example, not contain any billing function and not grant permission to access files.

There are innumerable possible ways to use computers and devices that connect to computers that do not infringe Bascom's patents. Defendants fail to explain how the Bascom Patents preempt any "abstract idea" when Defendants' own examples ("footnotes," "encyclopedia," and "library reference systems") all do not infringe the Bascom patents. Accordingly, it cannot be the case that Bascom has improperly pre-empted an "abstract idea."

The asserted claims in fact encompass only a minute portion of the theoretical number of ways to perform document linking using a computer. However, rather than implementing any one of these alternatives, Defendants chose to adopt the narrowly and specifically recited subject matter of the asserted claims. In an attempt to shrug off liability, Defendants now resort to alleging that everything they do is "abstract." However, as can be seen in the highly specialized

nature of the Bascom Patents' claims, the practical applications claimed therein are anything but an "abstract idea."

Defendants present no evidence, nor even any argument, that the claims of the Bascom Patent somehow preempt all possible methods of any of these concepts.  For this additional reason, Defendants' motion must fail because "[t]he concern that drives the exclusionary principle is one of pre-emption." *Helios,* U.S. Dist. LEXIS 135379 at *53 (citation to *Alice*, 134 S. Ct. at 2354 omitted); *France Telecom*, 2014 U.S. Dist. LEXIS 52564, at *27 ("Where the patent involves abstract ideas, the animating concern is whether the claims at issue are drawn such that they would preempt the abstract ideas invoked.").

### C.    Even Assuming, *Arguendo,* That The Patents Are Directed To An Abstract Idea, The Additional Limitations In The Claims Meaningfully Limits The Invention.

In conclusory fashion, Defendants dismiss all of the asserted claims as adding nothing to its "abstract idea" that would "confer patent eligibility."  Def. Br. at 19.  Step two of the Mayo/Alice analysis – determining whether the claims transform the abstract concept identified into something patentable – is entirely dependent on closely analyzing the limitations of the claim in the context of the field and the invention at issue.

Defendants summarily conclude that the claims add nothing "beyond a generic computer implementation."  Def. Br. at 1.  Contrary to Defendants' allegations, the claims do not describe "generic computer components" at all.  It is unclear how such terms as "link directories," "file storage," and "memory device" can be construed to be computers, generic or otherwise.

Moreover, in many of the claims, special purpose computers are required to generate link directories, link relationships, and handle billing users.  Wills Decl. ¶ 29.   In less than three pages, Defendants dismissively attribute nothing of importance to any of the dependent claims.  It is Defendants' burden to invalidate each asserted claim by clear and convincing evidence.  *Alcon Research*, 745 F.3d at 1188.  By not actually providing any real analysis in its motion for nearly all of the dependent claims, and in light of the presumption of validity accorded issued patents, the Court's inquiry can end here.  As shown in the attached Exhibit 7 there are numerous claim

limitations that Defendants never discuss in their brief.  Instead they are grouped together or ignored entirely.  The below is an excerpt from the tables showing some of the dependent claim limitations that are not addressed anywhere in Defendants' briefing.

| Patent And Claim | Exemplar Of Dependent Claim Limitation Not Addressed By Defendants |
|---|---|
| '241 Patent Claim 61 | creating one or more link directories on one or more servers coupled to the network, |
| '241 Patent Claim 63 | counting the instances of access the one user makes to the one or more link directories<br><br>storing the counted instances of link relationship and link reference creation associated with the one user |
| '241 Patent Claim 78 | enabling one or more users of the computing device to populate the one or more link directories with one or more link relationships |
| '232 Patent Claim 6 | authorizing the users of the network to allow access to other users |
| '232 Patent Claim 12 | targeting users of the network to which access to the link relationship will be provided by designating characteristics of the targeted users. |
| '232 Patent Claim 14 | first user is identified as responsible for the first document |
| '974 Patent Claim 9 | attributes identifies an entity responsible for a document object |
| '974 Patent Claim 7 | permitting the identification of link relationships assigned a particular attribute |
| '974 Patent Claim 34 | using a unique identifier to retrieve the link relationships |
| '971 Patent Claim 19 | retrieving one or more link references that participate in one or more of the identified first link relationships |
| '971 Patent Claim 21 | retrieving one or more document objects represented by the one or more link references that participate in one or more of the identified first link relationships |

## 1.   Patent Eligibility Does Not Depend On The Novelty Of Individual Steps Or Elements.

The Supreme Court has time and again stated that patent eligibility does not depend on the novelty of the individual elements of a claim.  Rather, each claim must be considered "as a whole" to determine if it recites patent-eligible subject matter.  The Court summarized this position in *Diehr*:

In determining the eligibility of respondents' claimed process for patent

20

protection under 101, their claims must be considered as a whole.  It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis.  This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made.  The "novelty" of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the 101 categories of possibly patentable subject matter.

*Diehr*, 450 U.S. at 188.

The Court reaffirmed this holding in *Alice*, noting, "Because the approach we made explicit in *Mayo* considers all claim elements, both individually and in combination, it is consistent with the general rule that patent claims 'must be considered as a whole.'"  *Alice*, 134 S. Ct. at 2355 n. 3.  Nowhere in its opinion did the Alice Court suggest that the determination of patent eligibility should be made based only on the novel elements in a claim, as Defendants now propose.  Rather, the Court narrowly held that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Id*. at 2358.  Notably, the use of a computer in Alice did not "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field," both of which would have constituted more than mere generic computer implementation. Id. at 2359. The only improvements were generic advantages associated with any computer-implemented process. *See* Oral Argument Transcript, *Alice v. CLS Bank*, at 15:23-16-12 (Mar. 31, 2014) (Breyer, J.) (noting that computer implementation makes any abstract idea faster and more efficient).

### 2.      Defendants Do Not Analyze The Claims "As A Whole."

When considered "as a whole," the claims of the patents-in-suit are patent eligible. Defendants examine each claim element in isolation, stripping away those that they contend are "conventional" or "well known in the art," until only "well known art" and "steps" are left.  Def. Br. at 18.  But the Supreme Court criticized precisely this approach in *Diehr*:

In order for the dissent to reach its conclusion it is necessary for it to read out of respondents' patent application all the steps in the claimed process which it

21

> determined were not novel or "inventive." That is not the purpose of the § 101 inquiry and conflicts with the proposition recited above that a claimed invention may be entitled to patent protection even though some or all of its elements are not "novel."

450 U.S. at 193 n. 15.

Absent any consideration of the claims as a whole – a required part of the § 101 analysis – Defendants simply cannot meet their burden of proof of establishing invalidity of the Bascom Patents by clear and convincing evidence.

### 3.   Defendants' Methodology Would Render Most Modern Technology Unpatentable.

Congress intended § 101 to give patents a wide scope, including modern technology and other "unanticipated inventions." *Bilski*, 130 S. Ct. at 3225, 3243 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 316 (1980)).  Defendants' methodology, however, would preclude most, if not all, patents on software and other modern technologies.  Defendants' analysis of each asserted claim follows the same erroneous formula previously rejected by the *Diehr* Court: identify a mathematical operation; explain away all other claim elements as "conventional" or "generic;" and conclude that the claims are directed to an abstract idea and nothing more.  Def. Br. at 17-18.   The Federal Circuit recognized in *Alice* that this approach lends itself to finding any invention unpatentable.  "If carried to its extreme, [this approach would] make all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious."  717 F.3d at 1298 (quoting *Diehr*, 450 U.S. at 189 n.12).

Defendants' approach would categorically deny patent protection to software and other Information Age technology – a rule that the Supreme Court has refused to adopt, despite several opportunities to do so.  As early as *Benson*, the Supreme Court refused to "preclude[] a patent for any program servicing a computer."  409 U.S. at 71.  More recently, in *Bilski*, the Supreme Court rejected the machine-or-transformation test as an exclusive test of patent eligibility precisely because the test would preclude the patentability of many software innovations.  130 S. Ct. at 3227.

Under Defendants' analysis, any patent to software or a database program would be

---

22

patent-ineligible under § 101 because the novelty is in the method applied, and not in the hardware used.  For example, the novelty of a new data compression methodology is in the technique used to transform the data into a smaller (compressed) format, and the novelty in a new encryption scheme is in the technique used to transform the data into a secure format unreadable by unintended recipients, *see TQP Development*, 2014 WL 651935, at *5.  *See also* Oral Argument Transcript, *Alice v. CLS Bank*, at 33:18-22 (Mar. 31, 2014) (Kennedy, J.) (noting that a "computer running [a] particular data compression algorithm" would be a patentable process because it "make[s] a machine work better").  Searching and managing documents on computer networks (as here), by definition, encompasses "inventions that make computers work better," and is also within the scope of "Information Age" technology that the Court intended to protect.

### D.     At Best for Defendants, Material Disputed Issues of Fact Remain Regarding the Patentability of the Claims.

Defendants do not present any evidence of patent ineligibility, for which they bear the burden of proof by clear and convincing evidence.  This reason alone is sufficient to deny Defendants' motion.  Even for the arguments Defendants advance, however, material disputed issues of fact preclude summary judgment.  Bascom's technical expert, Professor Craig Wills, disputes that the asserted claims recite only "routine, well-understood, or conventional" steps or elements.  Professor Wills opines – without any contradictory admissible evidence from Defendants – that the asserted claims recite elements that are novel and were not known in the art, and that, even if the recited steps or elements were known in the art, their use in the asserted patents is far from conventional.  Wills Decl. ¶¶ 30-33.  Some of the many facts that are subject to dispute and are currently the subject of unrebutted expert testimony include (1) whether the steps in the patents can be performed mentally; (2) where a specialized computer is required; (3) whether the claim limitations identified by Professor Wills (*Id*.) are novel and unknown at the time the patents were developed; and (4) whether the patents improve the function of a computer and network on which the system would be deployed.  The Federal Circuit has recognized the importance of these factual issues, which materially affect the § 101 analysis.  *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2870

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(2014).  By virtue of these factual disputes, summary judgment is not an appropriate vehicle for resolution.

**VI.      CONCLUSION**

For the forgoing reasons, this Court should deny Defendants' motion.

Dated:  October 24, 2014                          RUSS AUGUST & KABAT LLP

                                    By:    */s/ Brian D. Ledahl*
                                          MARC A. FENSTER
                                          BRIAN D. LEDAHL
                                          DORIAN S. BERGER

                                          Attorneys for Plaintiff
                                          BASCOM RESEARCH LLC

OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER 35 U.S.C. § 101
Case Nos. 12-cv-06294 SI / 12-cv-06293 SI