1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7   BASCOM RESEARCH, LLC,              Case No.  12-cv-06293-SI; Case No. 12-cv-
                                       06924 SI
            Plaintiff,
8                                      ORDER GRANTING
        v.                             DEFENDANTS' MOTIONS FOR
9                                      SUMMARY JUDGMENT
   LINKEDIN, INC.,
10
            Defendants.
11

12  BASCOM RESEARCH, LLC,              Re: Dkt. No. 117 in C 12-cv-6293 SI and Dkt.

13          Plaintiff,                 No. 141 in C 12-cv-6294

14      v.

15  FACEBOOK, INC.,

16          Defendants.

17

18

19

20          On December 2, 2014, the Court held a hearing on defendants' motions for summary

21  judgment of invalidity of plaintiff's patents-in-suit under 35 U.S.C. § 101.  For the reasons set

22  forth below, the Court GRANTS defendants' motions for summary judgment.

23

24                                  **BACKGROUND**

25          On October 3, 2012, plaintiff Bascom Research, LLC ("Bascom") filed related actions for

26  patent infringement against defendants Facebook, Inc. and LinkedIn Corporation under the Patent

27

28

Act, 35 U.S.C. § 101 *et seq*.[1]  *Bascom Research LLC v. Facebook, Inc.*, No. 12-cv-06293 SI, Dkt. No. 73, First Am. Compl. ("FAC") ¶ 3; *Bascom Research LLC v. LinkedIn Corporation*, No. 12-cv-06294 SI, Dkt. No. 92, First Am. Compl. ("*LinkedIn* FAC") ¶ 3.[2]  Bascom accuses defendants of directly and indirectly infringing four of its patents.  FAC ¶¶ 35-106.

On September 26, 2014, defendants filed motions for summary judgment of patent invalidity pursuant to 35 U.S.C. § 101.  Defendants contend that Bascom's patent claims are invalid under the recent U.S. Supreme Court decision in *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), because the claims (1) are directed to an "abstract idea," and (2) "do not recite any transformative elements beyond a generic computer implementation."  *Id.*

Bascom accuses defendants of infringing four patents: U.S. Patent No. 7,389,241 (the '241 patent) (titled "Method for Users of a Network to Provide Other Users with Access to Link Relationships Between Documents"); U.S. Patent No. 7,111,232 (the '232 patent) ("Method and System for Making Document Objects Available to Users of a Network"); U.S. Patent No. 7,139,974 (the '974 patent) ("Framework for Managing Document Objects Stored on a Network"); and U.S. Patent No. 7,158,971 (the '971 patent) ("Method for Searching Document Objects on the Network").  FAC ¶¶ 6, 9, 12, 15.  The '971 is a continuation-in-part of the '974, the '241 is a continuation-in-part of the '232, the '974 and '232 are both continuations-in-part of application No. 10/050,515, and all four patents claim priority to provisional applications filed in March 2001 and April 2001.

All four patents were issued to Thomas Layne Bascom.  *Id.*  The four patents-in-suit share substantially overlapping specifications.  Each of the four patents contains summaries stating:

> The systems, apparatus and methods of the present invention (hereinafter "Linkspace") incorporate and provide many improvements on existing methods for publishing, distributing, relating and searching document objects on computer networks, including the Internet.

---

[1] Plaintiff filed four other related actions for patent infringement.  *See Bascom Research LLC v. Novell Inc.*, No. 12-cv-06295 SI; *Bascom Research LLC v. Jive Software, Inc.*, No. 12-cv-06296 SI; *Bascom Research LLC v. Broadvision, Inc.*, No. 12-cv-06297 SI, and *Bascom Research LLC v. Salesforce.com*, No. 13-cv-02891 SI.  Each of these actions was ultimately dismissed.

[2] All further citations to the docket will refer to the civil docket for *Bascom v. Facebook, Inc.*, No. 12-cv-06293 SI.

United States District Court
Northern District of California

Linkspace operates to provide many beneficial improvements in searching, identifying, and publishing information over computer networks.

Linkspace permits a user of a computer network or the Internet to establish relationships between document objects located on the network or the Internet. Those relationships may comprise link relationships and link references and are maintained by Linkspace in one or more link directories. The contents of link directories may be organized, categorized, sorted and filtered in groupings based on various criteria relating to, among other things, user interests and attributes, the types of document objects and the nature of the content of those document objects. Linkspace allows a network user to be presented with a selection of links to document objects related to the document object the user is currently accessing based upon the URL of the current document object, and link relationships created by the user and other users of the network stored in the link directories.

'974 at 3:30-52; '241 at 3:11-35; '971 at 4:36-58; '232 at 2:63-3:19. The following claim is representative:

A method for providing a framework for document objects located on a network, the method comprising:

creating one or more link directories for storing link relationships between document objects located on the network, wherein the one or more link relationships are separate from the document objects;

creating a link relationship between a first document object located on the network and a second document object located on the network;

assigning attributes describing the link relationship, wherein the attributes are stored with the link relationship;

presenting the link relationship with one or more of the attributes describing the link relationship.

'974 Claim 45.[3] The other asserted claims similarly recite "link relationships" between document

---

[3] Defendants assert, and the Court agrees, that claim 45 of the '974 patent is representative of the asserted claims. The other asserted claims of the '974 patent recite using "unique identifiers" to identify the link relationships (claim 1); the use of "user profiles as filters," (claim 34); and the use of a "computer readable medium" containing instructions for performing the recited method (claim 44). The dependent claims of the '974 patent recite storing the link relationships with the attributes in link directories (claim 2); permitting users to access link directories (claim 5); permitting the identification of link relationships assigned a particular attribute (claim 7); and attributes or link relationships containing particular information (claims 8, 9 and 31). The asserted '241 claims add the concept of "billing" based upon link directories, and some of the dependent claims permit users to "sponsor" link directories. The asserted '232 claims recite features relating to making document objects accessible to users, including by providing access to the link relationship only to authorized users. The asserted '971 claims recite features for grouping and

United States District Court
Northern District of California

objects and different types of features involving link relationships. *See* '974 Claims 1, 2, 5, 7-9, 31, 34, 44; '232 Claims 4-6, 12, 14; '971 Claims 14, 19-21; and '241 Claims 1, 2, 4, 17, 24, 55, 61-63, 73, 74, 78.   The link relationships are described by attributes that are "descriptive, temporal, spatial, or quantitative in nature, i.e., describe the link reference in terms of who or what, when, where, or how much." '974 at 8:49-52; '971 at 10:12-15; '232 at 8:26-29; '241 at 8:32-34.  Attributes "may include descriptions of the content of either of the document objects [] related by the link relationship [] wherein that content may be described to include a product review, news article, product information page, competitor's product information, or product order forms, among other types of content." '974 at 13:17-22; '971 at 14:46-53; '232 at 12:59-65; '241 at 12:58-64. The link relationships may be stored in a "link directory," which the specifications describe as a "table" or a set of "relational database records." '974 at 11:34-12:35; '971 at 12:65-17:49; '232 at 11:11-40, 13:53-14:59; '241 at 11:11-40, 13:52-14:59. The specifications state that these features are implemented over a system that includes a network, "such as the Internet or other network of interconnected computers or a combination of networks and the Internet"; "client devices"; servers; "first document objects";  "second document objects"; "link references . . . corresponding to the first document objects 40 and the second document objects"; and "link relationships."  '971 at 6:53-8:30, 47:56-48:8; '232 at 4:66-6:44, 30:46-63; '974 at 5:22-6:67, 34:35-52; '241 at 5:9-6:52, 39:8-25.

During prosecution of the '971 patent, the Examiner rejected the claims based on 35 U.S.C. § 101 "because they merely recite a number of computing steps without producing any tangible result and/or being limited to a practical application within the technological arts." Dkt. 118-7 at 2-3. Bascom overcame these rejections by adding the words "computer-implemented" into the claims. Dkt. 118-22 at 10.  In 2012, the Patent Office rejected all pending claims in a related Bascom patent application under § 101.  Dkt. 118-23 at 2-3.  The rejected claims were directed to selecting objects, creating link references, associating attributes, and storing them in link directories.  Dkt. 118-24.  Bascom did not challenge the PTO's rejection.

retrieving "link references" that participate in link relationships.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

In the present cases, Bascom asserts claims for direct infringement under 35 U.S.C. § 271(a).  FAC ¶ 33.  Bascom alleges that defendants own and operate online social networking platforms that allow users "to create their own personal profiles, link with their friends, acquaintances, co-workers, etc., join common-interest user groups, and share a variety of content."  FAC ¶ 21; *see also LinkedIn* FAC ¶ 20.  Bascom alleges that both websites are built on social graphs accessible via Application Program Interfaces (APIs), which present objects in the graphs (e.g., people, groups, photos, etc.) and the connections between them (e.g., friend relationships, colleagues, shared content).  FAC ¶ 21; *LinkedIn* FAC ¶ 20.  Bascom claims that the objects and connections in the graphs can be manipulated and generated by user interaction.  FAC ¶ 25; *LinkedIn* FAC ¶ 24.  Bascom asserts that the Facebook and LinkedIn platforms infringe its four patents by:

> making, using, and operating the claimed system and methods on the [Facebook or LinkedIn] Platform. . . . By way of non-limiting example, as discussed above, the [Facebook and LinkedIn Platforms] include[] a number of document objects that represent various entities and things. The [Facebook and LinkedIn Platforms] also contain[] a number of linking relationships that logically connect the document objects to each other. These linking relationships contain a variety of attributes that describe the linking relationship. By way of non-limiting example, these attributes may be found in the social graph[s] of the [Facebook and LinkedIn Platforms] which may be represented using the [Facebook and LinkedIn] API[s] and may be manipulated [by user interaction] . . . Each of the elements of the social graph, including the link relationships, may be retrieved using a unique identifier and presented based on the particular implementation of the application. Furthermore, users of the [Facebook and LinkedIn Platforms] are given the ability to access objects based on their relationship to other objects.

FAC ¶¶ 31-32; *LinkedIn* FAC ¶¶ 32-33.

Bascom also alleges that defendants indirectly infringe the patents-in-suit pursuant to 35 U.S.C. § 271(b) "by instructing, directing and/or requiring others, including its users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the Patents-In-Suit."  FAC ¶ 33.

5

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.' " *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex,* 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

Under § 282 of the Patent Act, issued patents are presumed to be valid. 35 U.S.C. § 282. As such, an alleged infringer asserting an invalidity defense pursuant to § 101 bears the burden of proving invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i L.P.*, 131 S. Ct. 2238, 2242 (2011).

**DISCUSSION**

As an initial matter, Bascom contends that the Court must conduct claim construction to determine the validity of the patents-in-suit.  In response, defendants cite *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012), for the proposition that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). However, in *Bancorp* the Federal Circuit also stated "that it will ordinarily be desirable— and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Id*. at 1273–74.

The Court finds that Bascom has not shown why claim construction is necessary to determine whether the patents claim patent-eligible subject matter.  In any event, defendants state that they do not object to the Court assuming (for purposes of this motion only) the proposed constructions offered by Bascom.  Bascom proposes the constructions of the following terms: "link relationship" means "a structure having one or more pointers connecting two or more document objects and identifying one or more link relationship attributes"; "link relationship attribute(s)" means "information describing ways in which two or more document objects are related"; "the link relationships are separate from the document objects" means "link relationships are stored in a different location from the document objects."[4]  Bascom proposes to construe all other terms solely by their plain and ordinary meaning.  As the Court discusses below, adopting Bascom's proposed constructions does not alter the Court's conclusion that the patents-in-suit claim ineligible subject matter.

An invention is patent-eligible if it claims a "new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101.  The Supreme Court has held that, by defining patentable subject matter with "such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope." *Diamond v. Chakrabarty*, 447 U.S. 303, 308

---

[4]  The Court notes that Bascom previously took the position that "link relationship" did not require construction. Dkt. 107 at 1:27-28.

United States District Court
Northern District of California

(1980).

However, the Supreme Court has also held that § 101 contains an important implicit exception for three "patent-ineligible concepts": laws of nature, natural phenomena, and abstract ideas. *Alice*, 134 S. Ct. at 2355 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, v 1289, 1296–97 (2012)). The purpose of these exceptions is to protect "the basic tools of scientific and technological work that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (Citations omitted.).

In *Alice*, the patents at issue "disclose[d] a computer-implemented system for mitigating 'settlement risk' (*i.e.*, the risk that only one party to a financial transaction will pay what it owes) by using a third-party intermediary." *Alice*, 134 S. Ct. at 2351-52.

> The claims at issue relate to a computerized scheme for mitigating "settlement risk"— i.e., the risk that only one party to an agreed-upon financial exchange will satisfy its obligation. In particular, the claims are designed to facilitate the exchange of financial obligations between two parties by using a computer system as a third-party intermediary. The intermediary creates "shadow" credit and debit records (i.e., account ledgers) that mirror the balances in the parties' real-world accounts at "exchange institutions" (e.g., banks). The intermediary updates the shadow records in real time as transactions are entered, allowing "only those transactions for which the parties' updated shadow records indicate sufficient resources to satisfy their mutual obligations." 717 F.3d 1269, 1285 (C.A. Fed. 2013) (Lourie, J., concurring). At the end of the day, the intermediary instructs the relevant financial institutions to carry out the "permitted" transactions in accordance with the updated shadow records, ibid., thus mitigating the risk that only one party will perform the agreed-upon exchange.

*Id.* at 2352 (internal citation and footnote omitted). All of the claims were implemented using a computer. *Id.*

The Court set forth a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355.[5] First, a court must determine whether the claims at issue are "directed to one of those patent-ineligible concepts." *Id.* "If not, the claims pass muster under § 101."

---

[5] The Court first set forth the analytical framework for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts" in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. ——, 132 S. Ct. 1289 (2012). Courts applying this framework often refer to the test as the *Mayo/Alice* framework.

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014).  If the claims are directed to a patent-ineligible concept, the court then searches for an "'inventive concept'—*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice*, 134 S. Ct. at 2355.  In doing so, the court considers the elements of each patent claim "both individually and 'as an ordered combination[.]'"  *Id.* (citing *Mayo*, 132 S. Ct. at 1297).  At the first step, the Court held that the *Alice* claims were drawn to the abstract idea of intermediated settlement, "a fundamental economic practice long prevalent in our system of commerce."  *Id.* at 2356.  At the second step, the Court concluded that the claims, "which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention."  *Id.* at 2357.

> Using a computer to create and maintain "shadow" accounts amounts to electronic recordkeeping—one of the most basic functions of a computer. *See, e.g., Benson*, 409 U.S., at 65, 93 S. Ct. 253 (noting that a computer "operates . . . upon both new and previously stored data"). The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are "well-understood, routine, conventional activit[ies]" previously known to the industry. *Mayo*, 566 U.S., at ___, 132 S. Ct., at 1294. In short, each step does no more than require a generic computer to perform generic computer functions.

*Id.* at 2359.

Defendants move for summary judgment of invalidity pursuant to § 101.  Defendants contend that Bascom's patents are invalid under the *Alice* framework because the claims (1) are directed to the abstract idea of identifying two documents and establishing a relationship between them, and (2) do not recite any transformative inventive concept beyond a generic computer implementation.

## I.   Abstract Idea

At step one of the *Mayo/Alice* test, a court must evaluate the patent claims "[o]n their face" and determine if the claims are "drawn" to one of the three "patent-ineligible concepts": laws of nature, natural phenomena, or abstract ideas.  *Alice*, 134 S. Ct. at 2355.  Defendants contend that Bascom's claims are drawn to the abstract idea of establishing relationships between document

United States District Court
Northern District of California

objects.  According to defendants, establishing relationships between documents is a centuries-old concept that can also be performed by the human mind.  Defendants argue that the idea of establishing relationships between documents dates back thousands of years as evidenced by the catalog system at the library of Alexandria and by Simon Greenleaf's 1821 index that identified United States cases whose holdings had been overruled or limited by subsequent cases.  *See* RUDOLF BLUM, KALLIMACHOS: THE ALEXANDRIAN LIBRARY AND THE ORIGINS OF BIBLIOGRAPHY 244 (1991) (describing Kallimachos' "catalog which, unlike a mere inventory, recorded not the scrolls available in the library, but all copies of works of Greek literature that were contained in them, with biographical data" on their authors) (Dkt. 118-4); SIMON GREENLEAF, A COLLECTION OF CASES OVERRULED, DOUBTED, OR LIMITED IN THEIR APPLICATION (1821) (Dkt. 118-6).

The "abstract ideas" exception to § 101 embodies "the longstanding rule that '[a]n idea of itself is not patentable.'"  *Alice*, 134 S. Ct. at 2355; *see also Le Roy v. Tatham*, 55 U.S. 156, 175 (1852) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented[.]").  For instance, in *Bilski v. Kappos*, 561 U.S. 593, 611 (2010), the Supreme Court held that patent claims describing a method for hedging against the financial risk of price fluctuations were directed to an abstract idea.  The claims recited "the basic concept of hedging, or protecting against risk[,] . . . a fundamental economic practice long prevalent in our system of commerce."  *Id.*  The Court compared the *Bilski* patents to the patents invalidated in *Gottschalk v. Benson*, 409 U.S. 63, 72 (1972), and *Parker v. Flook*, 437 U.S. 584, 594 (1978), which were based upon mathematical formulas.  *Bilski*, 561 U.S. 593 at 611-12.  The *Bilski* Court found that validating the patents at issue would preempt the use of basic concepts or algorithms in all fields, "and would effectively grant a monopoly over an abstract idea."  *Id.*

Bascom attempts to distinguish its own patent claims by focusing on *Bilski*'s "fundamental economic practice" language.  Opp'n at 9.  Bascom contends that the Supreme Court and the Federal Circuit have invalidated claims when they were directed to "building block[s] of the modern economy" or "squarely about creating a contractual relationship."  *Alice*, 134 S. Ct at 2350 (quoting *Bilski*, 561 U.S. at 599); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d. 1350, 1355 (Fed. Cir.

2014).  Bascom argues that these types of claims are fundamentally different from Bascom's patents, which "narrowly claim a specific type of data structure for linking data,"  Opp'n at 8, namely the "link relationships" and "link directories" in which link relationships are stored separately from a document object and relate documents objects to one another.

Bascom likens its patents to the patents litigated in *Helios Software, LLC v. SpectorSoft Corp.*, C.A. No. 12–081–LPS,  2014 WL 4796111, at *17 (D. Del. Sept. 18, 2014).  In *Helios*, the District Court for the District of Delaware held that patents related to controlling computer network access and monitoring data associated with Internet sessions were *not* directed to an abstract idea.  2014 WL 4796111, at *17.  The court found that the alleged infringer made "no effort to show that these ideas are fundamental truths or fundamental principles the patenting of which would pre-empt the basic tools of scientific and technological work."  *Id.*  Accordingly, Bascom asserts that there is no "fundamental truth," "fundamental economic practice," or "basic tool of scientific and technological work" at issue in its own patents.  Opp'n at 9-10.

Bascom relies upon a narrow interpretation of the term "abstract idea."  Abstract ideas are not limited to "fundamental truths," "fundamental economic practices," or "basic tools of scientific and technological work."  *See Alice*, 134 S. Ct at 2356 (rejecting the argument that abstract ideas are confined to "preexisting, fundamental truths").  While the Supreme Court has not precisely defined "abstract idea," lower courts since *Alice* have invalidated patents encompassing a broad range of abstract ideas beyond Bascom's proposed scope.  *See, e.g., Open Text S.A. v. Alfresco Software Ltd*, No. 13-CV-04843-JD, 2014 WL 4684429, at *4 (N.D. Cal. Sept. 19, 2014) (invalidating computer patent based upon the abstract idea of "interacting with customers"); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No. CV 12-205-RGA, 2014 WL 3542055, at *3 (D. Del. July 16, 2014) ("[T]he abstract idea at the heart of a [a patent for a telephony network optimization method] is the very concept of a decision"); *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13 CIV. 8391 PAE, 2014 WL 3582914, at *14 (S.D.N.Y. July 8, 2014) (invalidating patent based upon "the abstract idea of meal planning"); *see also Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (invalidating patent directed to "the abstract idea of managing/playing the game of Bingo").

United States District Court
Northern District of California

The recent *Ultramercial* decision is instructive. In *Ultramercial*, the Federal Circuit affirmed the invalidity of a patent describing a method of distributing copyrighted media paid for by advertisers over the Internet. *Ultramercial*, 772 F.3d at 712. Applying *Alice*, the court held that the claims "recite[] an abstraction—*an idea*, having no particular concrete or tangible form." *Id.* at 715 (italics added.). The court added,

> The process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application. Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content.

*Id.*; *see also Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, ___ F.3d ___, 2014 WL 7272219, at *3 (Fed. Cir. Dec. 12, 2014) ("Applying *Mayo/Alice* step one, we agree with the district court that the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory. The concept of data collection, recognition, and storage is undisputedly well-known.").

Bascom's patents similarly describe "an abstraction" having no particular concrete or tangible form. Allowing users to generate relationships between document objects and storing those relationships separately from the document objects simply describes the abstract idea of creating, storing and using relationships between objects. As defendants illustrate at length, the concept of establishing and using relationships between documents is a common, age-old practice. Courts have found similar "commonplace and time-honored practices" to be abstract ideas. In *Cogent Medicine, Inc. v. Elsevier Inc.*, ___ F.Supp.3d ___, Case Nos. C-13-4479-RMW, C-13-4483, C-13-4486, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014), Judge Whyte recently invalidated a patent similar to the patents-in-suit. In *Cogent*, the representative claim recited:

> A method for providing data to a user from one or more data sets, said method comprising:
>
> accepting from a user and storing one or more search strategies directed to medical literature in data folders wherein said storage is

for repeat use by a user, each of said one or more search strategies associated with one or more of said one or more data sets; and

accepting from said user a request to view medical information, and, based on said request, selectively providing data set information in said data folders comprising preselected medical information for said user or users from said one or more data sets, said medical information having been preselected and placed in said folder by a specialist for said user or users and

at least one of (a) medical information from said one or more associated data sets corresponding to one of said search strategies directed to medical literature wherein said medical information is added to the said one or more data sets since the last time said user accessed said one or more associated data sets; or (b) medical information corresponding to one of said search strategies directed to medical literature wherein said medical information is not limited in time.

*Id.* at *2.  Judge Whyte found that the claims were directed to the "abstract idea of maintaining and searching a library of information. Given a database of information, the alleged invention catalogues the information and sets aside particular information that may be especially relevant based on the particular user." *Id.* at *4.  Judge Whyte held that "[t]his idea is little different than the basic concept of organizing a physical library so that an individual can search for information by going to the relevant portion of the library and picking a book. Should someone want preselected books, she can ask a librarian." *Id.*; *see also DietGoal Innovations LLC*, 2014 WL 3582914, at *3, 10 (invalidating claims for "computerized meal planning," and noting that "humans have assuredly engaged at least in rudimentary meal-planning 'for millennia.'").

Notably, the concept of establishing, storing and using associations between documents can also be performed mentally.  The Supreme Court and the Federal Circuit have generally considered such "mental processes" to be unpatentable.  *See Benson*, 409 U.S. at 67; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas[.]").  Bascom counters that its claims cannot be performed mentally because they require a computer network.  However, "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2352.

The Court concludes that Bascom's patents are comparable to other computer-based patents involving the creation and organization of data that have been invalidated after *Alice*.

United States District Court
Northern District of California

Establishing relationships between document objects and making those relationships accessible is not meaningfully different from classifying and organizing data.  In *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, the Federal Circuit invalidated a patent describing a "device profile" comprised of two sets of data (color information and spatial information) used to render a digital image.  758 F.3d 1344, 1349 (Fed. Cir. 2014).  The court found that the method described in the patent claims was an abstract idea "because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine."  *Id.* at 1350.  "Without additional limitations, a process that . . . manipulate[s] existing information to generate additional information is not patent eligible."  *Id.* at 1351.  Even *Helios*, upon which Bascom relies, suggested that the claims at issue may have described an abstract idea by encompassing "the ubiquitous use of the Internet or computers generally."[6]  2014 WL 4796111, at *17; *see also Cyberfone*, 558 Fed. Appx. at 992 ("[T]he well-known concept of categorical data storage, i.e., the idea of collecting information in classified form, then separating and transmitting that information according to its classification, is an abstract idea[.]"); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* No. 1:10CV910 LMB/TRJ, 2014 WL 5430956, at *8-11 (E.D. Va. Oct. 24, 2014) ("Using a database to compile and report on network usage information," "generating a single record reflecting multiple services," and "reporting on the collection of network usage information from a plurality of network devices" are abstract ideas.); *Cogent*, 2014 WL 4966326, at *4.

## II.  Inventive Concept

At step two of the *Alice* framework, the court considers the elements of each claim and asks, "what else is there in the claims before us?" 134 S. Ct. at 2355.  The Court describes this process as searching for an "'inventive concept'—*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id.*   For an abstract idea involving a computer to be patent-eligible, "the claim ha[s] to supply a 'new and useful' application of the idea."  *Id.* (quoting

_____

[6] The court ultimately found that the defendant in that case "provided no support for that position." 2014 WL 4796111, at *17.  In contrast, defendants in this case have provided ample evidence supporting its proposition that Bascom's patents are directed to an abstract idea.

*Benson*, 409 U.S. at 67); *see Diamond v. Diehr*, 450 U.S. 175, 177 (validating a claim employing a mathematical equation used in a larger process designed to solve a technological problem in the molding of rubber products).

However, under *Alice*, implementation onto a generic computer alone "cannot transform a patent-ineligible abstract idea into a patent eligible invention." 134 S. Ct. at 2358. Thus, "if a patent's recitation of a computer amounts to a mere instruction to 'implement' an abstract idea 'on . . . a computer,' that addition cannot impart patent eligibility." *Id.* (citing *Mayo*, 132 S. Ct. at 1301). *Alice* itself is instructive. After the Court held that patents describing a scheme for mitigating "settlement risk" were directed to an abstract idea, it also held that "[t]he introduction of a computer into the claims does not alter the analysis [of step two]." *Id.* at 2357. "Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility." *Id.* at 2358. (Citations omitted.); *see also Benson*, 409 U.S. at 71-72 (merely implementing a mathematical formula on a digital computer is not a patentable application); *Flook*, 437 U.S. at 596 (limiting an abstract idea to one field through a "post-solution application" does not make the claim patentable). This same principle is true for claims applying abstract ideas to the Internet. *See Ultramercial* 772 F.3d at 716 ("The claims' invocation of the Internet also adds no inventive concept[.]"); *CyberSource*, 654 F.3d at 1370 (implementation onto the Internet was not sufficient to transform an "unpatentable mental process" into patent-eligible subject matter).

Bascom contends that its claims "improve the operation of a computer" and "perform a transformation." Opp'n at 10, 12. However, considered individually and as an ordered combination, Bascom's claims amount to instructions to apply an abstract idea—i.e., the concept of establishing relationships between documents and making those relationships accessible to other users. *See Digitech*, 758 F.3d at 1349; *Cogent*, 2014 WL 4966326, at *4. The first step of representative claim 45 of the '974 patent is "creating one or more link directories for storing link relationships between document objects located on the network, wherein the one or more link relationships are separate from the document objects." '974 Claim 45. This is the abstract idea of organizing a set of relationships between documents and storing that information separate from the documents. The specifications describe the "link directories" as conventional tables or relational

United States District Court
Northern District of California

databases, which were known prior to Bascom's patents. *See* '974 at 11:34-12:35, 14:10-33; '971 at 12:65-17:49, '232 at 11:11-40, 13:53-14:59; '241 at 11:11-40, 13:52-14:59; *see also* Microsoft Computer Dictionary (1991), at 295-96 ("a relational database uses matching values in two tables to relate information in one to information in the other.  Microcomputer database products typically are relational databases.") (Dkt. 122-2); "A Timeline of Database History" available at http://quickbase.intuit.com/articles/timeline-of-database-history,      (Dkt.      118-16);      *DietGoal Innovations LLC v. Bravo Media LLC*, ___ F. Supp. 2d ___, No. 13 Civ. 8391 (PAE), 2014 WL 3582914, at *13 ("a stored database" is "one of the most basic functions of the generic computer"); *Walker Digital, LLC v. Google, Inc*., C.A. No. 11-318-LPS, 2014 WL 4365245, at *6 (D. Del. Sept. 3, 2014) (invalidating patent directed at "basic concept of controlled exchange of information about people as historically practiced by matchmakers and headhunters" implemented over "generic computer components (processor, memory)").

The remaining steps of '974 Claim 45 do not add anything to transform the abstract idea into a patent-eligible application. The second step of "creating a link relationship between a first document object located on the network and a second document object located on the network," recites the abstract concept of relating two documents applied in a generic and conventional network context.  The third step, "assigning attributes describing the link relationship, wherein the attributes are stored with the link relationship," simply describes storing information about the link relationships, and the final step, "presenting the link relationship with one or more of the attributes describing the link relationship," only adds the act of "presenting."   The other asserted claims similarly do not add transformative elements.[7]

Bascom relies on a declaration from its expert, Dr. Craig Wills, to argue that the patents-in-

---

[7] Bascom asserts that the Court must separately analyze every independent and dependent claim at issue.  However, the Court has determined that claim 45 of the '974 patent is representative, and that the other claims do not differ in any meaningful way from claim 45.  The Federal Circuit has held that analysis of a representative claim is sufficient, particularly where the patent holder does not show how other claims contain an inventive concept.  *See Content Extraction and Transmission LLC*, ___ F.3d ___, 2014 WL 7272219, at *3; *see also Mayo*, 132 S. Ct. at 1295 ("Like the Federal Circuit we take as typical claim 1 of the '623 Patent. . . For present purposes we may assume that the other claims do not differ significantly from claim 1.").  In any event, the Court agrees with defendants' analysis showing that every element of every asserted claim recites a conventional application of the abstract idea of linking documents with each other.  *See* Dkt. 118-26.

suit claim more than an abstract idea.  Dr. Wills states, *inter alia*,

> 15. It is my opinion that the Bascom Patents describe a specific system for structuring and storing the relationship information between two document objects on the network. Relationship information is stored in the "Link Directory" (No. 35) on a computer server that is separated from the location where the relationship information between two documents is stored.

> 16. It is my opinion that the Bascom patents describe a specific way for a computer user to establish a link relationship between two document objects when the objects are located on the computer network. The creation of a link relationship is specific to document objects that are stored on a network and is limited to the use of a computer two create relationships on a network.

> . . .

> 25. Bascom's characterization of the patents-in-suit as claiming an abstract idea is incorrect. It is my opinion that a person of ordinary skill in the art would not view the patents-in-suit as claiming an abstract idea. As discussed above, the technology associated with the patents-in-suit relates to specific methods and systems of utilizing a computer on a computer network to manage, index and locate digital files. Furthermore, the methods and systems disclosed in the Bascom patents contain a number of limitations that lead one of ordinary skill in the art to understand that the scope of the methods and systems claimed in the patents-in-suit are a narrow subset of possible methods of implementing a communications system designed to facilitate anonymous communications between parties.

> 26. The use of Link Relationships and Link Directories offers advantages over the prior art by allowing multiple users of the network to use the Link Relationships to locate digital content on a computer network. Further, by separating the location of a Link Relationship from the Document Object, Document Objects on a remote server can be more easily located.

> . . .

> 28. It is my opinion that for many of the claims in the Bascom Patents, one of the steps in the multi-step process is to create link relationships. These link relationships typically contain two pointers and one or more attributes. In many claims, another step in the multi-step process is to place a number of these link relationships in a link directory. Once the link directory is formed and populated, it may be directly searched for relationships between document objects. The link directory did not heretofore exist. The results of the search on the link directory may then be further processed or displayed. Thus, there is at least one transformation, if not several transformations that occur in the patent claims.

Dkt. 121-2.

United States District Court
Northern District of California

As an initial matter, the Court finds that Dr. Wills' analysis is largely conclusory. However, even accepting Dr. Wills' conclusions, they do not demonstrate that the asserted claims contain inventive elements that transform the abstract idea into a patent-eligible invention. Dr. Wills states that separating link relationships from documents allows the documents to be "more easily located." *Id.* ¶ 26.). However, "[e]fficient location of data is an unremarkable feature of a data storage system, especially in the computing age." *Enfish v. Microsoft Corp.*, ___ F. Supp. 3d ___, No. 12-cv-07360-MRP-MRW, 2014 WL 5661456, at *7 (C.D. Cal. Nov. 3, 2014) (invalidating two patents for information management and database system because the "claims are addressed to the abstract purpose of storing, organizing, and retrieving memory in a logical table. This abstract purpose does not become tangible because it is necessarily limited to the technological environment of computers."). Dr. Wills does not show that the patents improve the functioning of any computer. *Cf. Alice*, 134 S. Ct. at 2359-60 ("the claims do not, for example, purport to improve the functioning of the computer itself. Nor do the effect an improvement in any other technology or technical field. Instead, the claims at issue amount to nothing significantly more than the instruction to apply the abstract idea using some unspecified generic computer.").

Bascom has also not shown that the patents require anything beyond generic and conventional computer structures and unspecified software programming. Dr. Wills' statement that the patents could not be implemented on a "standard computer" (Wills Decl. ¶ 29) is both unsupported by any evidence and directly contradicted by the patents themselves, which define a "computer" as a "general purpose digital computing device," as well as "any other device with a microprocessor and an operating system enabling the device to be connected to a network of other information processing and communications devices." '971 at 1:63-2:6. These devices include "mainframe computers, server computers, minicomputers, personal computers, laptop portable computers, handheld computers, personal digital assistants, intelligent wireless phones." *Id.* Further, even if Dr. Wills is correct that the claims would not be implemented on a standard computer because they require a "network" and would be "executed on a computer configured as a server," courts have held that the use of a computer network and a server is not inventive. *See*

*buySAFE*, 765 F.3d at 1355 (using a computer network "is not even arguably inventive."); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (using a server is not inventive); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-CV-04843-JD, 2014 WL 4684429, at *5 (N.D. Cal. Sept. 19, 2014) (same).

The Court also notes that although Bascom argues that the Court must construe the claims prior to determining validity, Bascom has not shown why this is so, nor has Bascom advanced any argument showing why its proposed constructions are relevant to the validity analysis. Even if the Court adopted Bascom's proposed constructions, those constructions do not demonstrate that the patents are not directed to the abstract idea of establishing relationships between documents or that the patents contain transformative elements.

The Court rejects Bascom's assertion that additional limitations within its claims "meaningfully limits the invention." Opp'n at 19. Bascom argues that these limitations depend on the "context of the field and the invention at issue." *Id.* However, the mere implementation of an abstract idea to a computer or computer network does not supply a sufficient inventive concept. *See Alice*, 134 S. Ct. 2357; *Benson*, 409 U.S. at 71-72. In particular, the Supreme Court has explicitly warned against defining computer-based patents according to their usage. *See Bilski* 561 U.S. at 610-11 ("The prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'") (quoting *Diehr*, 450 U.S. at 191-92). That computer-based limitations exist does not demonstrate an "inventive concept" that transforms Bascom's claims into patentable subject matter.

Accordingly, the Court concludes that the patents-in-suit are invalid under § 101.

///

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS defendants' motions for summary judgment.

**IT IS SO ORDERED**.

Dated: January 2, 2015

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California